ACCEPTED
07-15-00135-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
8/10/2015 5:01:19 PM
Vivian Long, Clerk

**No. 07-15-00135-CV**

IN THE SEVENTH COURT OF APPEALS
AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
8/10/2015 5:01:19 PM
VIVIAN LONG
CLERK

PERSIMMON RIDGE PARTNERS EO, LP, RUSS VANDENBURG,
AND MARTHA VANDENBURG,

*Appellants*,

v.

FANNIE MAE,

*Appellee*.

Appeal from the 47th District Court, Randall County, Texas
No. 64645A, the Honorable Dan L. Schaap, Presiding

BRIEF FOR APPELLEE

Talmage Boston
tboston@winstead.com
State Bar No. 02681800
Kara D. Grimes
kgrimes@winstead.com
State Bar No. 24050693
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, TX 75201
Telephone: 214-745-5400
Facsimile: 214-745-5390

**ATTORNEYS FOR APPELLEE,
FANNIE MAE**

**ORAL ARGUMENT REQUESTED**

TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................................ i

Index of Authorities ........................................................................................... ii

Statement of Oral Argument ...............................................................................1

Summary of the Argument ..................................................................................1

Statement of Facts ...............................................................................................3

Argument .............................................................................................................9

    **I.**    Standard of Review ................................................................................9

    **II.**    The Trial Court Did Not Err in Granting Fannie Mae's Motion for Partial Summary Judgment Because Full Recourse Liability Against Appellants was Triggered by the Filing of Mechanic's and Materialman's Lien Affidavits Which Constituted Encumbrances Against the Property That Were Not Remedied Within Thirty Days of Their Filing. ..................................................10

        A.    The Filing of a Lien Affidavit is an Encumbrance that Constitutes a Transfer. ............................................................14

        B.    The Deed of Trust Does Not Require Perfection for a Lien or Encumbrance to Constitute a Transfer. .......................17

        C.    The Deed of Trust Does Not Require Attachment or Perfection for an Encumbrance to Constitute a Transfer. ........18

        D.    The Summary Judgment Evidence Conclusively Proves that the Liens and Encumbrances Were Not Remedied to Fannie Mae's Satisfaction Within Thirty Days. .......................20

Conclusion .........................................................................................................22

i

# INDEX OF AUTHORITIES

**Page(s)**

CASES

*Am. Mfrs. Mut. Ins. Co. v. Schaefer*,
124 S.W.3d 154 (Tex. 2003)..................................................................................11, 18

*Carr v. Brasher*,
776 S.W.2d 567 (Tex. 1989)..................................................................................10

*Carter v. PeopleAnswers, Inc.*,
312 S.W.3d 308 (Tex. App.—Dallas 2010, no pet.)............................................10, 13

*Davison, Inc. v. Webster*,
128 S.W.3d 223 (Tex. 2003)..................................................................................10, 18

*FM Props. Operating Co. v. City of Austin*,
22 S.W.3d 868 (Tex. 2000) ...................................................................................9

*Ford Motor Co. v. Ridgway*,
135 S.W.3d 598 (Tex. 2004)..................................................................................9

*Gibbs v. Gen. Motors Corp.*,
450 S.W.2d 827 (Tex. 1970)..................................................................................9

*Heller Fin., Inc. v. Lee*,
No. 01-C-6798, 2002 U.S. Dist. LEXIS 15183 (N.D. Ill. Aug. 12, 2002).....16, 17

*Jones v. Hyman*,
107 S.W.3d 830 (Tex. App.—Dallas 2003, no pet.)............................................10, 13

*LG Ins. Mgmt. Servs., L.P. v. Leick*,
378 S.W.3d 632 (Tex. App.—Dallas, 2012).........................................................11, 18

*Natividad v. Alexsis, Inc.*,
875 S.W.2d 695 (Tex. 1994)..................................................................................9

*Pineridge Associates, L.P. v. Ridgepine, LLC*,
337 S.W.3d 461 (Tex. App.—Fort Worth 2011, no pet.)........................15, 18, 20

ii

*Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*,
   223 S.W.3d 676 (Tex. App.—Dallas 2007, pet. denied) ...........................................10

*Star-Telegram, Inc. v. Doe*,
   915 S.W.2d 471 (Tex. 1995).................................................................................10, 13

*Tarrant Bank v. Miller*,
   833 S.W.3d 666 (Tex. App. – Eastland 1992, writ denied) .........................14, 17, 19

*Valence Operating Co. v. Dorsett*,
   164 S.W.3d 656 (Tex. 2005).................................................................................10, 11

**STATUTES**

TEX. GOV'T CODE §311.005(13)...............................................................................14

TEX. PROP. CODE §1.002 .........................................................................................14

TEX. PROP. CODE §5.024 .........................................................................................14

**OTHER AUTHORITIES**

http://www.merriam-webster.com/dictionary/encumbrance. ..................................14

iii

Appellee, Fannie Mae, requests oral argument on the issues briefed herein.

## SUMMARY OF THE ARGUMENT

This is a suit by Appellee, Fannie Mae ("Fannie Mae"), as noteholder, to recover the amounts owed by Appellants after their default on real estate loan documents executed in 2007 in connection with their purchase of an Amarillo apartment complex. Appellant-Persimmon Ridge Partners EO, LP, the borrower, defaulted on the subject "Multi-Family" promissory note ("the Note") by failing to make the monthly payments beginning in January 2012, and defaulted on the subject deed of trust ("the Deed of Trust") by allowing three mechanic's and materialman's liens and encumbrances to be filed on the property in 2010 and 2012 without securing their release within thirty days of their being filed. This default under the Deed of Trust imposed personal liability on Appellants-the Vandenburgs under the Key Principals Agreement they both signed in 2007 at the time the subject loan closed. Following default, as noteholder, Fannie Mae accelerated the Note and foreclosed on the property, leaving a post-foreclosure deficiency for which all Appellants have liability to Fannie Mae under the loan documents. Fannie Mae brought this action seeking to recover the deficiency and prevailed on its Motion for Partial Summary Judgment, with the trial court awarding Fannie

Mae a partial summary judgment against Appellants, jointly and severally, for the full deficiency amount sought, plus Fannie Mae's entitlement to recover its attorney's fees and costs, leaving as the only issue remaining in the case, the amount of Fannie Mae's attorney's fees. Appellants then stipulated to the amount of Fannie Mae's attorney's fees, allowing the case to be in a mode for final disposition, and Fannie Mae received its Final Judgment for the full amount of the deficiency ($1,933,046.68), plus its attorney's fees and costs. Appellants then filed this appeal.

In this appeal, Appellants argue that the trial court erred in granting summary judgment in favor of Fannie Mae on the basis that the mechanic's liens filed against the property were not properly perfected, and, therefore, did not constitute a default under the Deed of Trust, despite the lack of any such lien perfection requirement in the Deed of Trust. In fact, the Deed of Trust specifically provides that the grant, creation, or existence of any lien or encumbrance on the property which is not remedied within thirty days, without the noteholder's being required to demonstrate any impairment of its security by reason of the encumbrance, qualifies as a "transfer" which constitutes a full recourse "default."

Appellants further argue that the Texas Property Code requirements applicable to perfection of mechanic's liens should also be applied to any encumbrances which burden the subject property (by reason of there being

unperfected lien affidavits filed of record against property), claiming that an encumbrance does not arise under the Deed of Trust unless it is a perfected valid lien. Such an interpretation renders the term "encumbrance" in the Deed of Trust meaningless and, therefore, it violates Texas rules of contract construction.

Finally, Appellants argue that there is a fact issue regarding whether the Morrison Supply and Stowe's liens were "otherwise remedied" to Fannie Mae's satisfaction. Despite the fact that this argument is nonsensical and unsupported by any evidence, this argument cannot serve as a basis for reversing the trial court's granting partial summary judgment in favor of Fannie Mae because it totally ignores the existence of the Pavement Services lien, which Appellants concede was not released within thirty days after it was filed and, therefore, by itself serves as a basis for a full recourse default under the Deed of Trust.

### STATEMENT OF FACTS

This is a suit brought by Fannie Mae against Appellants, the borrower and "key principal" guarantors of a $7.2 million real estate loan made in 2007 in connection with the purchase of an Amarillo apartment complex. (CR 1:1135; 510-11, ¶3). The documents signed by Appellants for the loan transaction were comprised of a Multifamily Note ("Note") executed by Persimmon Ridge Partners EO, L.P. ("Borrower") (CR 1:1135, ¶1; 517-34), a Multifamily Deed of Trust, Assignment of Rents and Security Agreement and Fixture Filing (Texas) ("Deed of

Trust") executed by Borrower (CR 1:1135, ¶2; 535-80), and an Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability ("Key Principals Agreement") executed by Russ Vandenburg ("RV") and Martha Vandenburg ("MV" and, collectively with RV, "Guarantors") (CR 1:1135, ¶3; 530-34).

The Note was dated October 17, 2007 and provided for monthly payments to be made by Borrower to noteholder for a period of ten years, through November 2017. (CR 1:517-20). Although the Note, in general, limited Borrower's personal liability, Paragraph 9 contained certain carveout exceptions which imposed personal liability on Borrower for repayment of the debt. (CR 1:521-22). Further, pursuant to the Key Principals Agreement, Guarantors "absolutely, unconditionally and irrevocably agree[d] to pay to [Fannie Mae] … all amounts for which Borrower is personally liable under Paragraph 9 of the [Note]." (CR 1:530).

Beginning January 1, 2012, and continuing thereafter, Borrower failed to make the monthly payments due under the Note. (CR 1:1137, ¶16). On February 15, 2012, Borrower and Guarantor RV sent Fannie Mae a letter recommending that Fannie Mae "immediately institute a receivership" and notifying Fannie Mae that the principals of the partnership [i.e., the Guarantors] were unwilling to contribute any additional funds to the property "without any reasonable degree of certainty that those funds would be returned some day to the principals." (CR 1:1138, ¶21;

1331). Thereafter, Fannie Mae declared a default, accelerated the Note, and foreclosed on the real estate collateral under the Deed of Trust, in accordance with an Agreed Order Appointing Receiver entered into by Fannie Mae and Appellants. (CR 1:514-15, ¶¶11, 13; 208-09). Fannie Mae was the highest bidder at the foreclosure sale in April 2012, with a bid of $7,121,552.71, leaving a post-foreclosure deficiency of $1,933,046.68. (CR 1:515, ¶13; 1139, ¶¶33-35).

In addition to Borrower's payment default, Fannie Mae declared a default by Borrower and Guarantors under the Note, Deed of Trust, and Key Principals Agreement as a result of the filing of numerous mechanic's/materialman's liens and encumbrances against the property in 2010 and 2012, which were not released/remedied within 30 days of their filing, thereby qualifying as a "Transfer" under the Deed of Trust and giving rise to Appellants' personal liability for repayment of the debt owed under the Note. (CR 1:512-13, ¶¶8-9).

Specifically, Pavement Services Corporation ("Pavement Services") filed a mechanic's/materialman's lien affidavit against the property on September 22, 2010, in connection with the debt owed them in the amount of $166,312.00, relating to certain paving work it had provided on the property pursuant to a contract between Borrower and C&K Paving Contractors, Inc. ("C&K"). (CR 1:1136, ¶¶6, 11). Pavement Services had been the subcontractor hired by C&K to perform the actual paving work. (CR 1:1136, ¶¶7-8). The Pavement Services lien

affidavit was not bonded off, released of record, or otherwise remedied to Fannie Mae's satisfaction within 30 days of its filing, nor was it ever satisfied, removed, released of record, or otherwise remedied to Fannie Mae's satisfaction. (CR 1:513, ¶9; 1137, ¶13). In connection with Pavement Services' lien affidavit, Borrower had been a party defendant to and served with service of process in a lawsuit brought by Pavement Services to recover the debt (that was the subject of the lien affidavit) and Pavement Services ultimately obtained a final judgment against Borrower in such lawsuit. (CR 1:1137, ¶14).

Stowe's Independent Services, LLC ("Stowe's") also filed a lien affidavit against the property on March 21, 2012, in the amount of $108,006.00, in connection with the repair of fire damage to the property that had taken place in connection with a contract between Borrower and Property Improvements, Inc. ("Property Improvements"). (CR 1:1137-38, ¶¶17, 23). Stowe's had been the subcontractor hired by Property Improvements to perform the post-fire repairs to the property. (CR 1:1137, ¶17). The Stowe's lien affidavit was also not bonded off, released of record, or otherwise remedied to Fannie Mae's satisfaction within 30 days of its filing (CR 1:513, ¶9; 1138, ¶26), though it was released of record approximately five months later, on August 24, 2012, following Fannie Mae's having paid $90,000.00 to Stowe's. (CR 1:1140, ¶¶36, 39).

Morrison Supply Company ("Morrison Supply") filed a lien affidavit

against the property on March 29, 2012, in the amount of $1,376.05, in connection with certain repair work done to the property after the fire. (CR 1:1137, 1139, ¶¶18, 29). Morrison Supply was hired as a subcontractor by Stowe's to perform some of its work. (CR 1:1137, ¶18). The Morrison Supply lien affidavit was not bonded off, released of record, or otherwise remedied to Fannie Mae's satisfaction within 30 days of its filing, though it was released of record approximately six months later, on September 17, 2012, as a result of Fannie Mae paying $90,000.00 to Stowe's. (CR 1:513, ¶9; 1140, ¶¶36-37, 40).

Fannie Mae and Appellants filed cross-summary judgment motions in the trial court. (CR 1:1338). Fannie Mae's Motion for [Partial] Summary Judgment (the "MSJ") was based on there being no genuine issues of material fact regarding Appellants' liability to Fannie Mae for the post-foreclosure deficiency together with Fannie Mae's entitlement to recover its reasonable and necessary attorney's fees and expenses. (CR 1:492-876; 1097-1108). Appellants' Motion for Summary Judgment claimed that there could be no default under the Deed of Trust occasioned by unperfected lien affidavits. (CR 1:1117-34).

In connection with the summary judgment proceedings, Fannie Mae proved, in light of Appellants' stipulation, the following undisputed facts:

> 1) Since long prior to any defaults, Fannie Mae has been the owner and holder of the Note, Deed of Trust, Key Principals Agreement, and all other loan documents related to the 2007 loan transaction.

2) Appellants are signatories to and are, therefore, bound by the terms of the Note, Deed of Trust, and Key Principals Agreement, which are all valid and enforceable agreements.

3) Borrower defaulted on the Note by failing to make the monthly payments due thereunder, beginning January 1, 2012 and continuing thereafter.

4) The post-foreclosure deficiency owed under the Note is $1,933,046.68, plus per diem interest accruing from April 3, 2012.

5) Mechanic's and materialman's lien affidavits were filed against the collateral real estate in 2010 and 2012 and were not bonded off or released of record within 30 days of the date of their being filed.

(CR 1:1135, ¶¶4-5; 1136, ¶11; 1137, ¶¶13, 16; 1138, ¶¶23, 26; 1139, ¶¶29, 35; 513, ¶¶4-5, 9). The only issue raised by Appellants in their Response to Fannie Mae's MSJ, and in Appellants' own Motion for Summary Judgment, was whether the filing of the unperfected lien affidavits constituted a "Transfer" under the Deed of Trust thereby resulting in a default and triggering personal liability of Appellants for the post-foreclosure deficiency. (CR 1:1117-34, 1234-54).

The trial court considered the summary judgment motions and responses to them, and Fannie Mae ultimately succeeded in obtaining partial summary judgment against Appellants for the post-foreclosure deficiency, per its Order signed January 29, 2015, which held that Fannie Mae was entitled to recover from Appellants the full amount of the post-foreclosure deficiency and Fannie Mae's reasonable and necessarily incurred attorney's fees and expenses. (CR 1:1338-39). Thereafter, Appellants stipulated to the amount of Fannie Mae's reasonable

attorney's fees and expenses, which allowed the trial court to enter a Final Judgment in the case on March 10, 2015. (CR 1:1349-54).

Appellants filed their Notice of Appeal on April 1, 2015. (CR 1:1355-59).

**ARGUMENT**

## I.  Standard of Review

A summary judgment is reviewed *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). Fannie Mae is in general agreement with the statements made on pages 14-15 of Appellants' brief regarding the summary judgment standard. However, Fannie Mae adds to the statements made in the standard of review portion of Appellants' brief that the question on appeal is not whether the summary judgment proof raised a fact issue, but whether the summary judgment proof established as a matter of law that there was *no genuine issue of material fact* as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970) (emphasis added).

Furthermore, when, as in this case, the successful motion for summary judgment asserts several grounds, and the trial court does not specify on which ground the motion was granted, it is the appellant's burden to show that each independent ground is insufficient to support summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600-01 (Tex. 2004); *FM Props. Operating Co. v.*

*City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). Thus, the appellate court must affirm the summary judgment if any of the grounds advanced in the motion are meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 684 (Tex. App.—Dallas 2007, pet. denied). To prevail, Appellants must show that none of the proposed grounds is sufficient to support the judgment. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Jones v. Hyman*, 107 S.W.3d 830, 832 (Tex. App.—Dallas 2003, no pet.). If an appellant does not challenge each possible ground on which summary judgment could have been granted, the court of appeals must uphold the summary judgment on the unchallenged ground. *See, e.g., Carter v. PeopleAnswers, Inc.*, 312 S.W.3d 308, 311 (Tex. App.—Dallas 2010, no pet.).

## II. The Trial Court Did Not Err in Granting Fannie Mae's Motion for Partial Summary Judgment Because Full Recourse Liability Against Appellants was Triggered by the Filing of Mechanic's and Materialman's Lien Affidavits Which Constituted Encumbrances Against the Property That Were Not Remedied Within Thirty Days of Their Filing.

In construing a written contract, a court's primary concern is to ascertain the true intentions of the parties to that contract. *Davison, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). To achieve this objective, the court must examine and consider the entire writing in an effort to harmonize and give effect to all of the contract's provisions so that none are rendered meaningless. *Id.*; *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Contract terms are to

be given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Id.* More specific provisions are also controlling over general provisions. *Id.* A court may not rewrite the parties' contract or add language or conditions that the parties could have included. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003); *LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 638 (Tex. App.— Dallas, 2012) (pet. denied).

In the present case, the provisions of the loan documents unambiguously provide that a default occurred imposing full recourse liability against all the Appellants, triggered as a result of the filing of three unperfected mechanic's and materialman's lien affidavits which constituted encumbrances, that were not remedied within thirty days after their being filed, thereby qualifying as a "Transfer," and hence a default under the Note, Deed of Trust, and Key Principals Agreement. Specifically, Paragraph 9(c)(2) of the Note provides that "Borrower shall become personally liable to Lender for the repayment of all of the Indebtedness upon the occurrence of . . . a Transfer that is an Event of Default under Section 21 of the [Deed of Trust]." (CR 1:522). The Key Principals Agreement extends this liability to Guarantors for "all amounts for which Borrower is personally liable under Paragraph 9 of the [Note]." (CR 1:530).

Section 21(a)(1) of the Deed of Trust provides that "a Transfer of all or any

part of the Mortgaged Property or any interest in the Mortgaged Property" shall constitute an Event of Default. (CR 1:561). The Deed of Trust defines "Transfer" to include "the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law)[.]" (CR 1:543, ¶1(z)). Additionally, the Deed of Trust includes an express acknowledgment by Borrower that:

> the grant, creation or existence of any . . . lien or encumbrance (a "Lien") on the Mortgaged Property . . . whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the lien of this Instrument, is a "Transfer" which constitutes an Event of Default[.]

(CR 1:553, ¶16). Most importantly, on the issue of why an unperfected mechanic's lien affidavit qualified as an encumbrance, the Deed of Trust specifically provides that "Lender <u>shall not be required to demonstrate any actual impairment</u> of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 21[.]" (CR 1:562, ¶21(a)) (emphasis added).

The three lien affidavit encumbrances Appellants allowed to be filed on the property in 2010 and 2012 could have been exempted from being considered a Transfer and/or Event of Default under the Deed of Trust if they had been bonded off, released of record, or otherwise remedied to Fannie Mae's satisfaction within thirty days from the date they were filed. (CR 1:562, ¶21(b)(6)). Appellants,

however, failed to ever remedy or obtain a release of the Pavement Services lien affidavit and encumbrance; and the Morrison Supply and Stowe's lien affidavits and encumbrances were not remedied or released of record within thirty days of their filing. (CR 1:513, ¶9; 1137, ¶13; 1138, ¶26; 1140, ¶¶39-40). Thus, Appellants failed to avoid, cure and/or remedy the creation and existence of the encumbrances against the property in timely fashion, thereby triggering a default under the loan documents (CR 1:553, 562), giving rise to all Appellants having full recourse liability, jointly and severally, for all the indebtedness owed to Fannie Mae. (CR 1:522, 530).

Notably, in their first and second points of error, Appellants only argue that there were no liens or encumbrances that "attached" to the property (because the lien affidavits were not properly perfected) and, therefore, no Transfer/Event of Default occurred. However, Appellants ignore the fact that the "creation" or "existence" of an encumbrance is a Transfer/Event of Default. (CR 1:553). To prevail on appeal, Appellants must show that none of the proposed grounds is sufficient to support the judgment. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Jones v. Hyman*, 107 S.W.3d 830, 832 (Tex. App.—Dallas 2003, no pet.). Accordingly, Appellants' failure to challenge each possible ground on which summary judgment could have been granted is fatal to their appeal. *See, e.g., Carter v. PeopleAnswers, Inc.*, 312 S.W.3d 308, 311 (Tex. App.—Dallas

2010, no pet.).

### A. The Filing of a Lien Affidavit is an Encumbrance that Constitutes a Transfer.

Section 16 of the Deed of Trust provides that the "grant, creation *or* existence of any . . . lien or encumbrance . . . whether voluntary, involuntary or by operation of law, and whether or not such [lien or encumbrance] has priority over the lien of this Instrument" is a Transfer. (CR 1:553) (emphasis added). Here, the filing of the lien affidavit, regardless of its validity as a perfected lien, qualified as an encumbrance, since it clearly casted a cloud on the property's title. Under Texas law, a lien "does not have to be valid or enforceable to cast a cloud on one's title[.]" *Tarrant Bank v. Miller*, 833 S.W.3d 666, 667-68 (Tex. App. – Eastland 1992, writ denied). Moreover, in Merriam-Webster's dictionary, "encumbrance" is defined as an "impediment," a "burden," or a "claim . . . against property[.]" Merriam-Webster, http://www.merriam-webster.com/dictionary/encumbrance. Thus, under the plain, ordinary, and generally accepted meaning of the term, an encumbrance was created or existed as a result of the filing of the lien affidavits.[1] Because such lien affidavits and encumbrances were not released or remedied

---

[1] Appellants' reference to Section 5.024 of the Texas Property Code, which states that an "[e]ncumbrance *includes* a tax, an assessment, and a lien on real property" is unpersuasive, as it ignores the import of the term "includes" which is a term of inclusion and not one of limitation. TEX. PROP. CODE §5.024 (emphasis added); TEX. PROP. CODE §1.002 (providing that the "Code Construction Act (Chapter 311, Government Code) applies to the construction of each provision in this code"); TEX. GOV'T CODE §311.005(13) (defining the term "includes" as a "term[] of enlargement and not of limitation or exclusive enumeration, and use of the term[] does not create a presumption that components not expressed are excluded").

within thirty days, they constituted defaults which triggered Appellants' personal liability for the amounts owed under the Note. (CR 1:513, ¶9; 522, 530, 561-62).

Importantly, such recourse provisions have been routinely enforced by numerous courts. For example, in *Pineridge Associates, L.P. v. Ridgepine, LLC*, the owner of a note sued a defaulting borrower under a nonrecourse loan. 337 S.W.3d 461, 463 (Tex. App.—Fort Worth 2011, no pet.). The note contained a provision indicating it was generally nonrecourse but that "a Transfer (including, but not limited to, a lien or encumbrance) is an Event of Default under [the Deed of Trust]." *Id.* at 464. The deed of trust at issue defined an "Event of Default" as a transfer of the property or any interest in the property but excluded mechanic's and materialman's liens that were "released of record or otherwise remedied to [the lender's] satisfaction within 30 days." *Id.* The trial court enforced the unambiguous provisions of the loan documents and entered judgment against the borrower for full recourse liability due to the filing of liens or encumbrances that were not released or remedied in a timely fashion. *Id.* at 465. On appeal, the borrower unsuccessfully argued that the mechanic's liens were extinguished, and therefore "released of record," by the foreclosure sale of the property, and thus the lender was not entitled to invoke the full recourse trigger after the foreclosure sale because no "Event of Default" existed post-foreclosure. *Id.* at 465-69. The Fort Worth Court of Appeals rejected such arguments and affirmed the trial court,

finding that (i) the foreclosure sale did not constitute a release of record for the liens/encumbrances and (ii) since the liens/encumbrances were never released or remedied to the lender's satisfaction, the lender was entitled to full recourse liability against the borrower and guarantors because an "Event of Default" was still in existence post-foreclosure. *Id.* at 468-69.

Importantly, in the *Pineridge* case, the Fort Worth Court of Appeals found that "[a]lthough the extinguishment through foreclosure rendered the mechanic's liens *unenforceable*, the Deed of Trust <u>does not exclude</u> from an Event of Default liens that have been extinguished or *otherwise rendered unenforceable*." *Id.* at 468 and n. 7 (emphasis added) (noting appellee's difficulty in obtaining title insurance despite the unenforceability of the mechanic's liens). Therefore, the court found that, despite the unenforceability of the liens, a "Transfer/Event of Default" occurred, triggering full recourse liability. *Id.* at 468.

A similar result in an Illinois case involved very similar loan provisions. *Heller Fin., Inc. v. Lee*, No. 01-C-6798, 2002 U.S. Dist. LEXIS 15183, at *1 (N.D. Ill. Aug. 12, 2002). In *Heller*, the court entered summary judgment against the borrower and guarantor because full recourse liability was triggered by the filing of lien affidavits against property securing the loan in violation of a non-recourse carveout clause. *Id.*

In the present case, under the plain language of the Deed of Trust, and Texas

law, the filing of lien affidavits that were not released or remedied within thirty days of filing resulted in the creation or existence of a lien or encumbrance and therefore constituted a Transfer. The *Pineridge*, *Heller*, and *Miller* cases all support the trial court's determination in granting Fannie Mae's MSJ that a Transfer occurred as a result of the filing of lien affidavits, in light of the very similar language used in the loan documents in *Pineridge*, *Heller*, and this case.

**B. The Deed of Trust Does Not Require Perfection for a Lien or Encumbrance to Constitute a Transfer.**

Contrary to Appellants' assertion, the Deed of Trust does not require that a mechanic's/materialman's lien be perfected in accordance with Texas law in order for the filing and untimely release of the lien affidavit to qualify as a Transfer. On pages 24-25 of their brief, Appellants argue that the term "create" (a lien or encumbrance) in the Deed of Trust can only be interpreted to mean a lien that has been "perfected" under the requirements of the Texas Property Code. However, the word "perfected" appears nowhere in the Deed of Trust provisions pertaining to a "Transfer," nor are there any references to the Texas Property Code provisions pertaining to perfection of a lien. (CR 1:553, ¶16; 561-62, ¶21). Interposing the term "perfected" and/or Texas Property Code requirements into the Deed of Trust in its definition of what qualifies as the "creation" of a lien or encumbrance would impose an additional restriction on a Transfer/Event of Default which was not expressly agreed to by the parties. Under Texas rules of contract construction,

courts are not permitted to rewrite agreements between parties or interpose additional restrictions. *Schaefer*, 124 S.W.3d at 162; *Leick*, 378 S.W.3d at 638; *Pineridge*, 337 S.W.3d at 468 (finding that, although the mechanic's liens at issue were unenforceable, the deed of trust did not exclude from an "Event of Default" liens that were unenforceable and, therefore, appellants were personally liable for the debt).

More importantly, imposing an additional restriction of "perfection" into the definition of what qualifies as a lien or encumbrance directly contradicts the express provision in Section 21 of the Deed of Trust, providing that "Lender <u>shall not be required to demonstrate any actual impairment of its security</u> or any increased risk of default in order to exercise any of its remedies with respect to [a Transfer] Event of Default[.]" (CR 1:562) (emphasis added). Imposing Appellants' suggested "perfection" restriction would render Section 21 meaningless, meaning Appellants' interpretation conflicts with Texas' rules of contract construction. *See Webster*, 128 S.W.3d at 229 (holding that a court must consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none are rendered meaningless).

### C. The Deed of Trust Does Not Require Attachment or Perfection for an Encumbrance to Constitute a Transfer.

Contrary to Appellants' contention, neither attachment nor perfection of a lien is required in order to constitute an encumbrance under the Deed of Trust. On

pp. 26-27 of their brief, Appellants contend that under the Deed of Trust's Section 1(z)(B), an encumbrance filed of record without being released in thirty days qualifies as a Transfer only when it has been "granted" or "attached" to the real estate collateral.  First of all, in making that argument, Appellants ignore the term "creation" in Paragraph 1(z)(B), which provides that the "creation" of an encumbrance is a Transfer.  (CR 1:543).  Second, Appellants also ignore the term "existence" in the express acknowledgement by Borrower in Section 16 of the Deed of Trust – the "grant, creation or *existence*" of an encumbrance is a Transfer.  (CR 1:553) (emphasis added).  Thus, the "creation" or "existence" – not just the "attachment" – of an encumbrance constitutes a Transfer.   (CR 1:553).  Accordingly, the mere existence of an encumbrance (i.e., the existence of any cloud on title) – which occurred as a result of the filing of lien affidavits – constitutes a Transfer/Event of Default under the Deed of Trust.

Appellants also contend on page 28 of their brief that "attachment . . . of an encumbrance" requires the existence of a validly created lien (i.e., one that is properly perfected) and that, because the lien affidavits "did not create liens that attached to the Property, then it follows that these [lien] affidavits do not constitute encumbrances that attached to the Property."  As stated previously herein, under the plain language of the Deed of Trust, an "encumbrance" was created or existed as a result of the filing of the lien affidavits.  (CR 1:553); *see also*, *Miller*, 833

S.W.3d at 667-68 (finding that a lien "does not have to be valid or enforceable to cast a cloud on one's title"); *Pineridge*, 337 S.W.3d at 468 and n. 7 (noting appellee's difficulty in obtaining title insurance despite the unenforceability of the mechanic's liens). This interpretation is also consistent with the language in Section 21 of the Deed of Trust which very clearly and specifically states that "Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to [a Transfer] Event of Default[.]" (CR 1:562). Moreover, Appellants' interpretation of "encumbrance" – that an encumbrance cannot occur unless there is a valid lien that is properly perfected – would render the term "encumbrance" in the Deed of Trust meaningless and would therefore, violate Texas law of contract construction.

**D.    The Summary Judgment Evidence Conclusively Proves that the Liens and Encumbrances Were Not Remedied to Fannie Mae's Satisfaction Within Thirty Days.**

In their third point of error, Appellants argue that there is a fact issue regarding whether the Morrison Supply and Stowe's liens were "otherwise remedied" to Fannie Mae's satisfaction within thirty days of their creation. However, this argument cannot serve as a basis for defeating the trial court's having granted Fannie Mae's MSJ because it completely ignores the Pavement Services lien. Appellants have conceded that the Pavement Services lien was not

bonded off or released of record within thirty days. (CR 1:1137, ¶13). Appellants' only argument with respect to the Pavement Services' lien is that "there is no summary judgment evidence" that the Pavement Services' lien "was not otherwise remedied" to Fannie Mae's satisfaction within thirty days. Appellants' brief, p. 30. However, contrary to Appellants' assertion, Fannie Mae produced undisputed evidence that the Pavement Services lien and encumbrance was never "remedied to Fannie Mae's satisfaction." (CR 1:513, ¶9). Therefore, the Pavement Services lien is not exempted from being a Transfer/Event of Default under the Deed of Trust and, standing alone, it defeats Appellants' third point of error.

Further, the summary judgment evidence conclusively proved that neither the Morrison Supply nor the Stowe's lien affidavits were bonded off, released of record, or otherwise remedied to Fannie Mae's satisfaction within thirty days after they were filed of record. (CR 1:513, ¶9; 1138, ¶26; 1140, ¶¶39-40). Appellants contend that, despite their stipulations that the Morrison Supply and Stowe's liens were not bonded off or released of record within thirty days, a fact issue exists regarding whether they "were otherwise remedied to Fannie Mae's satisfaction within 30 days of their creation," because Fannie Mae "wanted" these claims to be paid, and ultimately paid for them to be remedied/released at some later point in time, even though the lien affidavits were not remedied/released to Fannie Mae's satisfaction within thirty days of when they were filed. *See* Appellant's brief, pp.

31-32. This argument is in total conflict with the clear terms of the Deed of Trust. Fannie Mae's "hope" that the lien affidavit claims would be paid from insurance proceeds at some point in time does not equate to their being "remedied/released" to Fannie Mae's satisfaction within thirty days of their being filed. In fact, the lien affidavits were not released of record until several months after they were filed, and only as a result of Fannie Mae having to pay $90,000.00 to Stowe's to release the claims for the debt owed by Borrower. (CR 1:1140, ¶¶36-37, 39-40). Fannie Mae's having paid $90,000.00 to release debts owed by Borrower obviously did not qualify as the lien affidavit claims being remedied to "Fannie Mae's satisfaction." Moreover, the evidence clearly and unambiguously proves that the liens and encumbrances "were not otherwise remedied to Fannie Mae's satisfaction." (CR 1:513, ¶9).

## CONCLUSION

Fannie Mae respectfully asks that the Court overrule all of Appellants' points of error, affirm the trial court's Final Judgment, and grant Fannie Mae any other relief, at law or in equity, to which it may be entitled.

Respectfully submitted,

By: /s/ Talmage Boston
Talmage Boston
(tboston@winstead.com)
State Bar No. 02681800
Kara D. Grimes
(kgrimes@winstead.com)
State Bar No. 24050693
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400
(214) 745-5390 (Fax)

ATTORNEYS FOR APPELLEE FANNIE MAE

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2)(B), because it contains 5,331 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Talmage Boston
Talmage Boston

CERTIFICATE OF SERVICE

This is to certify that on August 10, 2015, I used the Court's electronic case filing system to file this Brief for Appellee and also served this document on the following counsel via electronic mail or facsimile:

Francis S. Ainsa, Jr.
Ainsa Hutson, LLP
5809 Acacia Circle
El Paso, TX  79912


    /s/ Talmage Boston
Talmage Boston

4840-5394-0005v.4
5359-1033 8/10/2015

No. 07-15-00135-CV

IN THE SEVENTH COURT OF APPEALS
AMARILLO, TEXAS

---

PERSIMMON RIDGE PARTNERS EO, LP, RUSS VANDENBURG
AND MARTHA VANDENBURG,

*Appellants,*

v.

FANNIE MAE,

*Appellee.*

---

Appeal from the 47th District Court, Randall County, Texas
No. 64645A, the Honorable Dan L. Schaap, Presiding

---

APPELLEE'S APPENDIX

---

Talmage Boston
tboston@winstead.com
State Bar No. 02681800
Kara D. Grimes
kgrimes@winstead.com
State Bar No. 24050693
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, TX 75201
Telephone: 214-745-5400
Facsimile: 214-745-5390

**ATTORNEYS FOR APPELLEE,
FANNIE MAE**

## Table of Contents

| 1. | Joint Stipulations of Fact, with Ex. D only | Appendix Tab 1 |
| --- | --- | --- |
| 2. | Affidavit of James Noakes, attached as Exhibit A to Fannie Mae's Motion for Summary Judgment, with Ex. A-4 only | Appendix Tab 2 |
| 3. | TEX. PROP. CODE §1.002 | Appendix Tab 3 |
| 4. | TEX. GOV'T CODE §311.005 | Appendix Tab 4 |
| 5. | http://www.merriam-webster.com/dictionary/encumbrance | Appendix Tab 5 |

# APPENDIX

# "Tab 1"

NO. 64645A

| | | |
|---|---|---|
| FANNIE MAE, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | RANDALL COUNTY, TEXAS |
| PERSIMMON RIDGE PARTNERS | § | |
| EO, L.P., RUSS VANDENBURG, and | § | |
| MARTHA VANDENBURG, | § | |
| | § | |
| Defendants. | § | 47TH JUDICIAL DISTRICT |

## JOINT STIPULATIONS OF FACT

Plaintiff and Defendants submit the following Joint Stipulations of Fact:

1.  On October 17, 2007, Defendant, Persimmon Ridge Partners, executed a promissory note payable to the order of Wachovia Multifamily Capital, Inc. in the amount of $7,212,000 (the "Note"). A copy of the Note is attached as Exhibit A.

2.  The Note was secured by a Deed of Trust dated October 17, 2007 (the "Deed of Trust"), against property described therein (the "Property"). A copy of the Deed of Trust is attached as Exhibit B.

3.  On October 17, 2007, Russ Vandenburg and Martha Vandenburg ("the Vandenburg Defendants") signed the Key Principals Agreement, a copy which is attached as Exhibit C (the "Key Principals Agreement").

4.  Plaintiff is the owner and holder of the Note, the Deed of Trust, the Key Principals Agreement, and all other loan documents related to the Note.

5.  Defendants acknowledge that they are signatories to and, therefore, bound by the terms of the Note, the Deed of Trust, the Key Principals Agreement and all other loan documents, which are all valid and enforceable agreements; although Defendants do not agree that the recourse provisions in the loan documents specifying the effect of the borrower's failing to release, bond around or otherwise satisfy mechanic's liens within 30 days of filing, are triggered by any mechanic's liens that are not valid or properly perfected under Texas law.

JOINT STIPULATIONS OF FACT
Page 1
6419387v.2 5359-1033

**Exhibit 1**

**1135**

FILED
12/1/2014 4:45:26 PM
Jo Carter, District Clerk
Randall County, Texas
____AH_____Deputy

6.	On June 28, 2010, Defendant, Persimmon Ridge Partners, entered into a contract with C&K Paving Contractors, Inc. ("C&K") to repave the parking lot of the Property. The contract between Persimmon Ridge Partners and C&K showed Defendant Persimmon Ridge's address as c/o TVO North America, 221 N. Kansas St. 16th Floor, El Paso, Texas 79901.

7.	C&K hired Pavement Services Corporation ("Pavement Services") as a subcontractor to perform the paving work. Pavement Services' proposal to C&K, dated October 28, 2009, showed the Project as being the TVO North America – The Timbers Apartments, located at 4615 Virginia Street, Amarillo, Texas 79109.

8.	On June 28, 2010, Pavement Services commenced paving the parking lot described pursuant to the subcontract with C&K. Pavement Services completed the work on July 2, 2010.

9.	During June 2010, Pavement Services logged 387.5 man hours and 267.5 hours of equipment usage. During July 2010, Pavement Services logged 272.5 man hours and 185.5 hours of equipment usage.

10.	On September 10, 2010, Pavement Services sent a notice of its claim for unpaid billings in the amount of $166,312.00 to Defendant Persimmon Ridge Partners and to C&K. The notice sent to Defendant Persimmon Ridge Partners was sent to an address of 6090 Surety Dr., Suite 102, El Paso, Texas 77905-2061, (which was the mailing address for Persimmon Ridge as of September 10, 2010, according to the public record of the Texas Secretary of State), and was also sent to Defendant Persimmon Ridge's business address at 221 N. Kansas, El Paso, Texas 79901, though it was not sent to the project address at 4615 S. Virginia, Amarillo, Texas 75109.

11.	On September 22, 2010, Pavement Services filed an affidavit claiming a lien against the Property for $166,312.00. The affidavit of lien stated that Pavement Services had performed the work or furnished the materials in July 2010. The copy of the affidavit sent to Defendant Persimmon Ridge Partners was sent to an address of 6090 Surety Dr., Suite 102, El Paso, Texas 77905-2061, (which was the mailing address for Persimmon Ridge as of September 10, 2010, according to the public record of the Texas Secretary of State), and was also sent to Defendant Persimmon Ridge's business address at 221 N. Kansas, El Paso, Texas 79901, though it was not sent to the project address at 4615 S. Virginia, Amarillo, Texas 75109.

12.	The affidavit of lien filed by Pavement Services did not affirmatively state that part of the labor and materials were furnished during the month of June 2010.

1136

13. The Pavement Services affidavit of lien was not bonded off or released of record by any of the Defendants within 30 days after it was filed.

14. Defendant Persimmon Ridge was a party defendant to and was served with service of process in the lawsuit brought in early 2011 on the debt that's the subject of the mechanic's lien by C&K Paving Contractors, Inc. and Pavement Services in the 47th District Court, Randall County, Texas, as Cause No. 63402A, in which C&K and Pavement Services obtained a Final Judgment on November 26, 2012.

15. On November 3, 2011, a fire occurred at the apartment building on the property secured by the Deed of Trust resulting in the loss of 24 units in two buildings.

16. Beginning January 1, 2012 and continuing thereafter, Defendant Persimmon Ridge Partners failed to make the monthly payments due under the Note.

17. After the fire, Defendant Persimmon Ridge Partners d/b/a Timbers Apartments, entered into a contract with Property Improvements, Inc. ("Property Improvements") to repair the fire damage by providing labor and materials to install and repair duct work, air handlers, and related HVAC systems at the project (the "Property Improvements Contract"). The proposal from Property Improvements to Timbers Apartments showed that the business address of the Timbers Apartments was 4615 S. Virginia, Amarillo, TX 79109. Property Improvements then entered into a subcontract with Stowe's Independent Services, LLC ("Stowe's") to complete the work under the Property Improvements Contract. This work was commenced in November 2011 and was completed in February 2012.

18. In January 2012, Stowe's entered into a subcontract with Morrison Supply Company ("Morrison Supply") to perform some of its work under the Property Improvements Contract, to repair damage from the fire that occurred in November 2011.

19. On March 15, 2012, Stowe's sent notice of an unpaid claim to Defendant Persimmon Ridge Partners c/o Flanagan and Bilton, 500 North Dearborn Street, Suite 400, Chicago, IL 60654-3386 in the amount of $1,657.48 for labor and materials furnished during January 2012 to Persimmon Ridge Partners. Flanagan and Bilton had been Persimmon Ridge's attorneys for purposes of its challenging the Property's valuation for taxation purposes in 2011, though their address on North Dearborn Street in Chicago was still (in March 2012) listed as Persimmon Ridge's address, according to the Randall County Tax Appraisal records.

20. Persimmon Ridge Partners never notified or informed Stowe's that Flanagan and Bilton was its representative for any purpose or that notices of any kind intended for Persimmon Ridge could be sent to Flanagan and Bilton's address.

21. On February 15, 2012, Defendants Persimmon Ridge Partners and Russ Vandenburg sent Plaintiff's asset manager, GSE Asset Management, the letter attached as Exhibit D. On March 13, 2012, pursuant to an Agreed Order Appointing Receiver entered into by Plaintiff and Defendants, Michael L. Walker, CPM, was appointed as receiver of the Property.

22. On March 20, 2012, Stowe's sent notice of an unpaid claim in the amount of $108,006.00 for labor and materials furnished during November and December of 2011 and January through February of 2012 to Property Improvements and Defendant Persimmon Ridge Partners c/o Flanagan and Bilton, LLC, 500 North Dearborn Street, Suite 400, Chicago, IL 60654-3386.

23. On March 21, 2012, Stowe's filed an affidavit claiming a lien for $108,006.00 for labor and materials furnished during November and December of 2011 and January through February of 2012.

24. On March 20, 2012, Stowe's sent a copy of the Stowe's lien affidavit to Property Improvements and to Defendant Persimmon Ridge Partners c/o Flanagan/Bilton, LLC, 500 North Dearborn Street, Suite 400, Chicago, IL 60654-3386.

25. Stowe's did not send notices of unpaid claims or a copy of the affidavit claiming a lien to Defendant Persimmon Ridge Partners' business address or its reputed address, but rather sent notices only to the address for Persimmon Ridge that was listed on the Randall County Tax Appraisal Records.

26. The Stowe's lien affidavit was not bonded off or released of record by any of the Defendants within 30 days after it was filed.

27. On March 15, 2012, Morrison Supply sent a notice of unpaid claim to Defendant Persimmon Ridge Partners at 500 North Dearborn Street, Suite 400, Chicago, IL 60654-3386. Flanagan and Bilton had been Persimmon Ridge's attorneys for purposes of challenging the Property's valuation for taxation purposes in 2011, though their address on North Dearborn Street in Chicago was still (in March 2012) listed as Persimmon Ridge's address, according to the Randall County Tax Appraisal records.

28. Persimmon Ridge Partners had never notified or informed Morrison Supply that Flanagan and Bilton was its representative for any purpose or that notices of any kind intended for Persimmon Ridge could be sent to Flanagan and Bilton's address.

29. On March 29, 2012, Morrison Supply filed an affidavit claiming a lien for $1,376.05.

30. On March 27, 2012, Morrison Supply sent a copy of the Morrison Supply lien affidavit to Aida Wondwesson, Substitute Trustee, 5400 Renaissance Tower, 1201 Elm Street, Dallas, Texas 75270 and to Defendant Persimmon Ridge Partners at 500 North Dearborn, Suite 400, Chicago, IL 60654.

31. 500 North Dearborn Street, Suite 400, Chicago, IL 60654-3386 was not and has never been Defendant Persimmon Ridge's business address or reputed business address; however, it was listed as Persimmon Ridge's mailing address on the Randall County tax valuation public record during March 2012.

32. On April 3, 2012, Plaintiff Fannie Mae conducted a trustee's sale under the Deed of Trust and sold the Property for $7,121,552.71.

33. On the date of the trustee's sale, the amount due and owing consisted of principal in the amount of $7,212,000.00, plus accrued unpaid interest and default interest in the amount of $231,835.75, plus late charges in the amount of $7,575.11, plus a claimed prepayment premium of $1,933,046.68, and plus other fees and expenses in the amount of $28,311.19, *less* an offset in the amount of $358,169.34 (for insurance loss proceeds, reserves, and tax and insurance escrows held).

34. The credit bid at the foreclosure sale was in an amount equal to all principal, interest, and fees due on the Note as of the foreclosure sale date but did not satisfy the indebtedness owed, including the prepayment premium claimed by Plaintiff.

35. The outstanding indebtedness, if determined by the Court to be owed by Defendants, is $1,933,046.68, and it accrues interest at $550.38 per day from April 3, 2012 until date of payment.

36. On April 10, 2012, after the trustee's sale had taken place and within 30 days of the filing of the Stowe's lien affidavit, Plaintiff's senior asset manager, Nancy Bennett, sent the Receiver, Mr. Walker, an email asking if the amount invoiced by Stowe's "will be paid from insurance proceeds." Mr. Walker responded on April 10, 2012, by saying "I would say yes,"

though the Receiver did not succeed in getting the insurer to pay the Stowe's debt, and Fannie Mae ended up paying $90,000.00 to Stowe in order to get the lien released.

37. On May 16, 2012, the Receiver issued a report and stated in his summary that the Stowe's claim and the Morrison Supply claim had been paid. The amount claimed by Stowe's included the amount claimed by Morrison Supply.

38. On June 12, 2012, Plaintiff, Fannie Mae, sent Defendant Persimmon Ridge Partners and the Vandenburg Defendants a notice letter (attached as Exhibit "E") stating that a search of the real property records showed that mechanic's and materialman's liens had been filed by C&K, Stowe's, and Morrison Supply and demanded that they be removed from the Property in the form of a recordable full release and that proof of the proper recording of such releases be provided by June 26, 2012.

39. On August 24, 2012, the Stowe's lien affidavit was released.

40. On September 17, 2012, the Morrison Supply lien affidavit was released.

41. The Pavement Services lien affidavit was not bonded off or released of record by any of the Defendants within 30 days after filing but was extinguished by the Trustee's Sale that was conducted in March 2012.

42. Defendant Persimmon Ridge Partners and the Vandenburg Defendants did not have the funds to obtain releases of the Pavement Services, Stowe's and Morrison Supply liens or to bond them off.

43. Neither Persimmon Ridge Partners, LP nor the Vandenburg Defendants received any notices of lien claims or lien affidavits from Flanagan Bilton, LLC.

Signed this _____ day of _____, 2014.

_____
JUDGE PRESIDING

JOINT STIPULATIONS OF FACT
Page 6
6419387v.2 5359-1033

APPROVED AS TO
SUBSTANCE AND FORM:

Talmage Boston
Attorney for Plaintiff Fannie Mae

Frank Ainsa
Attorney for Defendants Persimmon Ridge
Partners EO, L.P., Russ Vandenburg, and
Martha Vandenburg



**TVO**
NORTH AMERICA
*Our vision. Your opportunity.*

February 15, 2012

Lawrence Rothrock, Asset Manager
GSE Asset Management
Wells Fargo Commercial Mortgage Servicing
MAC T9009-041
5080 Spectrum Drive, 4th Floor
Addison, Texas 75001

Re: Timbers Apartments,
Amarillo, Texas

Dear Mr. Rothrock:

As previously reported to you, ever since the fires occurred at the Timbers Apartments, our partnership has worked diligently to: (i) file claims with our insurance carriers, (ii) obtain the largest possible sum from our insurance carriers (both for property damage and loss rents), and (iii) to repair the damages to the property from the fire and to repair the heaters and air-handlers. On January 25, 2012, I wrote to you to set forth our proposed plan with respect to repairing the damage from the fires at the Timbers Apartments and with respect to the repairs and/or replacements necessary to the heaters and air-handlers as identified in the report from PCM Engineering.

Kevin Stasiewicz and you have had discussions about the financial difficulties for the Timbers Apartments resulting from the loss of rents. And, now there is another negative development. The contractor making the repairs and/or replacements to the heaters and air-handlers has pulled off the job site because our partnership cannot continue to pay for the contractor's work.

In order for the plan described in my letter of January 25, 2012 to be carried out funds need to be advanced until insurance proceeds are received. The cash flow from operations is not sufficient to meet these needs, the principals of our partnership have determined that they cannot contribute any additional funds to the partnership. This is not a decision which we have reached lightly or without many attempts to find an alternative course of action. But, the principals of our partnership are unable, currently and in the foreseeable future, to contribute additional capital to the property without any reasonable degree of certainty that those funds would be returned some day to the principals.

Our partnership will continue to diligently manage the property. But I believe that the lender should immediately institute a receivership to insure the current value of the collateral for the mortgage will be maintained and to carry out the repairs described above. Our partnership will cooperate fully with your company and any such receiver to insure an orderly transfer of control to such receiver. TVO North America, LLC (the current property manager) is willing to continue in such role for as long as your company or the receiver decides that you wish it to continue.

Please advise us as how your company wishes to proceed.

Sincerely,

Russell Vandenberg

Russell Vandenberg, Partner
Persimmon Ridge Partners II-O.L.P.

RAV/ch

1331

NEW YORK • CHICAGO • DALLAS • EL PASO • HOUSTON

FM0000241

**Exhibit D**

# APPENDIX

# "Tab 2"

NO. 64645A

| | | |
|---|---|---|
| FANNIE MAE, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | RANDALL COUNTY, TEXAS |
| PERSIMMON RIDGE PARTNERS | § | |
| EO, L.P., RUSS VANDENBURG, and | § | |
| MARTHA VANDENBURG, | § | |
| | § | |
| Defendants. | § | 47TH JUDICIAL DISTRICT |

## AFFIDAVIT OF JAMES NOAKES

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared James Noakes, who is personally known to me and who, after being first duly sworn upon his oath, deposed and stated as follows:

1.     "My name is James Noakes. I am above the age of twenty-one (21) and have never been convicted of a felony or a crime involving moral turpitude. I am of sound mind and capable of making this Affidavit. The statements made by me in this Affidavit are true and correct and are based upon my personal knowledge.

2.     "I am employed by Fannie Mae, the Plaintiff in the above-captioned lawsuit, and I am authorized to execute this Affidavit on behalf of Fannie Mae. My job title is Senior Asset Manager, and my duties and responsibilities include, among other things, monitoring loans in which Fannie Mae invests and pursuing loss mitigation and recovery activities in connection with defaulted loans. On behalf of Fannie Mae, I am the person who has responsibility for management and resolution of the underlying loan at issue in the above-captioned lawsuit, including exercising Fannie Mae's rights and remedies with respect thereto, and I am a custodian

**AFFIDAVIT OF JAMES NOAKES – Page 1**

509

of certain of the business records of Fannie Mae related to such loan, which records are and have been maintained under the custody and control of Fannie Mae in the regular course of Fannie Mae's business and are relied upon by Fannie Mae in order to conduct its business. All of the business records and documents described herein and/or attached hereto are and have been kept by Fannie Mae in the course of a regularly conducted business activity, and appear to have been made in the regular course of business by or under the supervision of personnel with personal knowledge of their contents, and signed at or near the time of the Loan (defined below) for which they document, and such records clearly reflect their trustworthiness.

3. "Based on my review of Fannie Mae's business records related to the Loan (defined below), the evidentiary predicate for which is set forth above, Defendant Persimmon Ridge Partners EO, L.P., as Borrower, ("Borrower") signed a Multifamily Note dated October 17, 2007 (the "Note") in the original principal amount of Seven Million Two Hundred Twelve Thousand Dollars and No/100 ($7,212,000.00) in connection with a loan ("Loan") made to Borrower by Wachovia Multifamily Capital, Inc. ("Original Lender"). In connection with the Loan, Defendants Russ Vandenburg ("RV") and Martha Vandenburg ("MV"), as Key Principal (collectively, the "Key Principals") signed an Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability ("Agreement of Key Principals"), pursuant to which the Key Principals "absolutely, unconditionally and irrevocably agree[d] to pay to Lender, or its assigns, on demand, all amounts for which Borrower is personally liable under Paragraph 9 of the [Note.]" A true and correct copy of the Note, and the attached Agreement of Key Principals (save and except the redaction of the Key Principals' social security numbers), is attached hereto as "Exhibit A-1." Based on information and belief, proceeds from the Loan were used by Borrower to either purchase or refinance the property

known as the Timbers Apartments, located at 4615 South Virginia Street, Amarillo, Texas 79109, in Randall County, Texas (the "Property"). The Note is further secured by, among other things, that certain Multifamily Deed of Trust, Assignment of Rents and Security Agreement and Fixture Filing (Texas) (the "Deed of Trust") of same date, which caused the Property to become the real estate collateral securing the Loan. A true and correct copy of the Deed of Trust is attached hereto as "Exhibit A-2."

4. "Subsequent to their execution, judging by the face of the instruments of assignment, on October 17, 2007, Original Lender endorsed, assigned and delivered to Fannie Mae all of Original Lender's right, title and interest in and to the Note, the Agreement of Key Principals, the Deed of Trust, and all other related loan documents (collectively, the "Loan Documents"), as evidenced by the endorsement on the Note and by the Assignment of Multifamily Deed of Trust, Assignment of Rents and Security Agreement and Fixture Filing ("Assignment of Deed of Trust") and the Assignment of Collateral Agreements and Other Loan Documents ("Assignment of Loan Documents"). True and correct copies of the Assignment of Deed of Trust and the Assignment of Loan Documents are attached hereto as "Exhibit A-3." The circumstances set forth above regarding the Note, the Agreement of Key Principals, the Deed of Trust, the Assignment of Deed of Trust, the Assignment of Loan Documents, and other related Loan Documents are in accordance with the statements made about Fannie Mae's business records in paragraph 2 of this Affidavit.

5. "Fannie Mae remains the owner and holder of the Note, the Agreement of Key Principals, the Deed of Trust, and all other related Loan Documents.

6. "Fannie Mae relies on the servicers of its loans to monitor and record payments made by borrowers and to calculate the debt owed on the loans, among other things. Wells

Fargo Commercial Mortgage Servicing ("Wells Fargo") is the servicer for the Loan at issue in this lawsuit. The payment defaults by the Borrower, as well as the current amounts due and owing under the Note and related Loan Documents, are set forth in the Affidavit of Twilla Revelle ("Revelle Affidavit") being filed concurrently herewith.

7. "Although the Note is, for the most part, a non-recourse note (meaning Fannie Mae's only recourse for satisfaction of the indebtedness following the Borrower's default is to foreclose on the Property), there are certain exceptions and/or carve-outs which impose personal liability on Borrower. *See* **Exhibit A-1** at ¶ 9(a), (c) (pp. 5-6). The Agreement of Key Principals extends this liability to RV and MV for all amounts for which Borrower is liable under Paragraph 9 of the Note. *See* **Exhibit A-1** at p. 14, para. 1.

8. "A non-monetary default occurred and full recourse liability of Borrower, RV, and MV was triggered as a result of the filing of numerous mechanic's and materialman's liens against the Property totaling $275,694.05, without having such liens and encumbrances removed within thirty days of their being filed, in violation of the Note, the Deed of Trust and the Agreement of Key Principals. *See* **Exhibit A-1** at ¶ 9(c), **Exhibit A-1** at p. 14, **Exhibit A-2** at ¶ 1(z), 16, 21(a)(1), 21(b)(6), 22(e), **Exhibit A-4** and **Exhibit C-1** at Nos. 33-35, 49-51, and 65-67. Specifically Paragraph 9 of the Note provides that:

> (c) Borrower shall become personally liable to Lender for the repayment of all of the Indebtedness upon the occurrence of any of the following Events of Default: . . .

> (2) a Transfer that is an Event of Default under Section 21 of the Security Instrument.

*See* **Exhibit A-1** at ¶9(c) (p. 6). Section 21 of the Deed of Trust provides that "a Transfer of all or any part of the Mortgaged Property or any interest in the Mortgaged Property" shall constitute an Event of Default. *See* **Exhibit A-2** at ¶ 21(a)(1) (p. 24); *see also id.* at ¶ 22(e) (p. 28). The

**AFFIDAVIT OF JAMES NOAKES – Page 4**

512

Deed of Trust defines "Transfer" to include "the granting, creating or attachment of a lien, encumbrance or security interest (whether voluntary, involuntary or by operation of law)[.]" *See id.* at ¶ 1(z) (p. 6). Additionally, the Deed of Trust specifically includes an acknowledgement by the Borrower that any lien or encumbrance on the Property is a "Transfer" constituting an Event of Default. *See id.* at ¶ 16 (p. 16). Moreover, the Deed of Trust provides that "Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of default in order to exercise any of its remedies with respect to an Event of Default under this Section 21." *See* **Exhibit A-2** at p. 25.

9. "Attached hereto as "**Exhibit A-4**" are true and correct copies of mechanic's and materialman's liens filed of record against the Property in 2010 and 2012. Based on my review of Randall County's property records, as well as Fannie Mae's business records related to the Loan, the liens and encumbrances shown in Exhibit A-4 were not satisfied, removed, or released of record within thirty days of their filing, and the lien and encumbrance filed in 2010 has never been satisfied, removed, or released of record. Furthermore, such liens and encumbrances were not otherwise remedied to Fannie Mae's satisfaction.

10. "The multiple liens that Borrower allowed to be filed on the Property could have been exempted from being considered as an Event of Default if the liens had been removed of record or otherwise remedied to Fannie Mae's satisfaction within thirty days from the date they were filed. *See id.* at ¶ 21(b)(6) (p. 25). Borrower, however, failed to ever satisfy or remove the 2010 lien; and the two liens filed in 2012 were not satisfied or removed within thirty days of their filing. *See* **Exhibit A** at ¶ 8 and **Exhibit A-4**. On June 12, 2012, Fannie Mae (through its counsel) sent a demand letter to Borrower, RV, and MV advising them of the mechanic's and materialman's liens and demanding that they cause such liens to be removed from the Property

and provide proof of the recorded releases of such liens. *See* **Exhibit A-7**. Borrower, RV, and MV failed to take action to avoid, cure and/or remedy the filing of the mechanic's and materialman's liens against the Property in timely fashion, in direct violation of the loan documents. *See* **Exhibit A** at ¶ 12, **Exhibit A-1** at ¶¶ 1, 9(c) (p. 2, 6), **Exhibit A-1** at p. 14, **Exhibit A-2** at ¶¶ 1(z), 16, 21(a)(1), 21(b)(6), 22(e) (pp. 6, 16, 24-25, 28), and **Exhibit A-4**. As a result, the multiple liens Borrower, RV, and MV allowed to be filed on the Property, and then not satisfied or removed from the record within thirty days after their filing, all qualified as "Transfers" under the loan documents and gave rise to full liability of Borrower, RV, and MV for the repayment of all indebtedness owed. *See id.*

11. "As a result of Borrower's failure to pay the principal and interest installments due under the Note for the months of January and February, 2012, counsel for Fannie Mae sent Borrower a notice of default and acceleration and demand for payment, dated February 16, 2012, a true and correct copy of which is attached hereto as "**Exhibit A-5**." In the notice, Fannie Mae (through its counsel) demanded that Borrower immediately pay in full the amounts owed under the Note, including the entire outstanding principal balance of the Note, plus accrued and unpaid interest thereon, and Fannie Mae's attorneys' fees and costs. Such notice further advised Borrower that, as a result of the defaults and acceleration of the indebtedness, absent Borrower's paying all amounts owed on the Loan, Fannie Mae had the immediate right to institute foreclosure proceedings under the Deed of Trust and to exercise any and all other rights and remedies provided in the loan documents and at law and in equity.

12. "Despite the February 16, 2012 notice and demand, Borrower failed to pay the amounts owed under the Note and, as a result, by letter dated March 12, 2012, a true and correct copy of which is attached hereto as "**Exhibit A-6**", Fannie Mae (through its counsel) informed

Borrower, RV, and MV that Fannie Mae intended to proceed with a foreclosure sale of the Property, scheduled for April 3, 2012, and again made demand for the immediate payment of all amounts due and owing under the Note.

13. "Pursuant to the Substitute Trustee's Deed and Bill of Sale, a true and correct copy of which is attached hereto as "Exhibit A-8", the foreclosure sale of the Property was conducted on April 3, 2012. Fannie Mae was the highest bidder at the foreclosure sale with a bid of $7,121,552.71. Accordingly, at the foreclosure's conclusion, the Substitute Trustee conveyed the Property to Fannie Mae on April 3, 2012. At the time of such conveyance, the foreclosure bid amount of $7,121,552.71 was applied as a credit against the outstanding debt owed by Borrower on the Note.

14. "Pursuant to the June 12, 2012 letter from Fannie Mae's counsel, a true and correct copy of which is attached hereto as "Exhibit A-7", Fannie Mae (through its counsel) demanded that Borrower, RV, and MV cause the mechanic's and materialman's liens to be removed from the Property and provide proof of the recorded releases of such liens. However, based on my review of Randall County's property records and Fannie Mae's business records related to the Loan, Borrower, RV, and MV failed to take any action, either before or after the June 12, 2012 letter, to avoid, cure and/or remedy the filing of such liens against the Property

15. "Pursuant to the Affidavit of Twilla Revelle (the "Revelle Affidavit") being filed concurrently herewith, as of April 3, 2012, immediately prior to the foreclosure sale of the Property, the total amount owed under the Note and related Loan Documents (not including all of Fannie Mae's attorneys' fees and expenses) was $9,054,599.39. As of April 3, 2012, after applying Fannie Mae's $7,121,552.71 foreclosure bid as a credit against the outstanding debt owed under the Note and related Loan Documents, there remains a deficiency in the amount of

AFFIDAVIT OF JAMES NOAKES – Page 7

515

$1,933,046.68 owed by Borrower, RV, and MV under the Note, Agreement of Key Principals, and related Loan Documents. From and after April 3, 2012, default interest continues to accrue on the outstanding debt of $1,933,046.68 at the per diem amount of $550.38, which per diem amount I personally calculated based on the default interest rate of 10.25% per annum, in accordance with the Note. In addition, Fannie Mae has incurred attorneys' fees and expenses in the amounts set forth in the Affidavit of Talmage Boston (the "Boston Affidavit") being filed concurrently herewith in connection with its efforts to collect the debt owed by Borrower, RV, and MV and enforce the provisions and remedies under the Loan Documents.

Further Affiant sayeth naught."

_____
James Noakes

SUBSCRIBED and SWORN TO this the 23rd day of June, 2014.

_____
Notary Public in and for the State of Texas

My Commission Expires:

4-19-16

Linda S. Henderson
Commission Expires
04-19-2016



# MORRISON
## SUPPLY COMPANY

2012005424    LC    Total Pages: 4

STATE OF TEXAS

COUNTY OF RANDALL

### MECHANIC'S AND MATERIALMAN'S LIEN AFFIDAVIT

BEFORE ME, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally appeared Christy Westerman who being by me here and now duly sworn, upon oath says: That the Affiant is the Settlements Manager of MORRISON SUPPLY COMPANY, hereinafter called "Claimant", and is duly qualified and authorized to make this affidavit, fully cognizant of the facts herein set out and such facts are true and correct:

Claimant has furnished materials to improve the property herein described.

1. **PERSIMMON RIDGE PARTNERSHIP EO, LP.** , whose last known address is, **500 NORTH DEARBORN, SUITE 400, CHICAGO, ILLINOIS 60654**, is the owner or reputed owner of the land herein described and the improvements located thereon.

2. **STOWE'S INDEPENDENT SERVICES**, whose last know address is **P.O. BOX 1254, GRAPEVINE, TEXAS 76099**, is the Original Contractor on the project or that portion thereof for which the hereinafter described materials were furnished.

3. Said materials were furnished to **STOWE'S INDEPENDENT SERVICES** by Claimant pursuant to an agreement between Claimant and Claimant's Customer.

4. The materials were furnished for the improvement of real property located in RANDALL County, Texas, which real property is described as follows:

   Lot 1, Block 1, Western- Air Addition, an Addition to the City of Amarillo, Randall County, Texas, according to the recorded map or plat there of recorded in Volume 568, Page 544, Deed Records of Randall County, Texas.

   ALSO KNOWN AS:
      4615 SOUTH VIRGINIA STREET,
      AMARILLO, TEXAS 79109

5. The Claimant's business address is 311 East Vickery, Fort Worth, Texas 76104, and mailing address is PO Box 70, Fort Worth, TX 76101.

EXHIBIT 587 A-4

# MORRISON
## S U P P L Y   C O M P A N Y

The principal amount of the claim is **$1,376.05**, and said amount is just and correct and all just and lawful offsets, payments and credits known to the Affiant have been allowed.

The materials are described as follows:
HVAC and Plumbing equipment, supplies, and related materials, including but not limited to ducts, pipe, valves, fittings, fixtures, and appliances.

Materials, for which payment is requested, were delivered during the months of **JANUARY 2012** . The amount due for each month is detailed on Addendum "A".

Notices of claim were sent to the Owner and/or Original Contractor as detailed on Addendum "B".

The purpose of this affidavit is to claim a mechanic's and materialman's lien on the above described land and improvements.

Signed and executed this the 27TH day of MARCH 2012.

_____
Affiant
Christy Westerman
Settlements Manager

STATE OF TEXAS

COUNTY OF TARRANT

SUBSCRIBED and SWORN TO BEFORE ME, by the said Christy Westerman, Settlements Manager, of Morrison Supply Company this the 27TH day of MARCH , 2012, to certify which witness my hand and seal of office.

_____
Notary Public, State of Texas



JAMIE F. HUDGINS
Notary Public
STATE OF TEXAS
My Comm. Exp. 07/28/2012

588

# ADDENDUM "A"

## DELIVERY DATE STATEMENT

| | |
|---|---|
| **DATE** | |
| 3/27/2012 | |
| **PAGE** | |
| Pago 1 of 1 | |

STOWE'S INDEPENDENT
SERVICES
PO BOX 1254
Grapevine, TX 76099-

CUSTOMER NO

**02STOI01**

Project: THE TIMBERS APARTMENTS Addr: 4615 S VIRGINIA ST Amarillo, TX  79109

| DELIVERY DATE | INVOICE NO | AMOUNT | INVOICE DATE |
|---|---|---|---|
| 1/27/2012 | 02981476 | 1,657.48 | 1/27/2012 |
| 3/12/2012 | 02985736 | -281.43 | 3/12/2012 |
| **BALANCE DUE** | | 1,376.05 | |

589



# MORRISON
SUPPLY COMPANY

### ADDENDUM "B"

Notice letters were sent to the Owner and Original Contractor by Certified Mail as follows:

Notice to Owner
MARCH 15, 2012

Certified Mail Number
7196 9008 9111 4623 0148

Notice to Original Contractor
MARCH 15, 2012

Certified Mail Number
7196 9008 9111 4623 0155

RETURN TO:

MORRISON SUPPLY COMPANY
P.O. BOX 70
FORT WORTH, TEXAS 76101
PHONE: 817-870-2227

## FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Renee Calhoun*

2012005424
03/29/2012 11:08 AM
Fee: 28.00
Renee Calhoun, County Clerk
Randall County, Texas
LC

590

# AFFIDAVIT CLAIMING CONSTITUTIONAL AND STATUTORY MECHANIC'S AND MATERIALMEN'S LIEN

Affiant, David B. Stowe, on oath swears that the following statements are true and are within the personal knowledge of Affiant:

My name is David B. Stowe. I am the managing member of Stowe's Independent Services, LLC, a Texas limited liability company ("Claimant"). This affidavit is made to perfect a constitutional and statutory mechanic's and materialman's lien against the real property described below:

1.      Claimant has an unpaid claim in the amount of $108,006.00 ("Claim Amount") for labor and materials furnished on the construction of improvements generally known as the Timbers Apartments, 4615 S. Virginia Street, Amarillo, Texas construction project. The Claim Amount is, within my personal knowledge, just and true, the same is due and unpaid, and all just and lawful offsets, payments, and credits have been allowed. The Claim Amount is for labor and materials furnished and described below, on which a systematic record has been kept.

2.      The name and last known address of the owner or reputed owner ("Owner") of the real property and improvements on which this claim is made are:

> Persimmon Ridge Partnership EO, LP c/o Flanagan/Bilton, LLC
> 500 North Dearborn Street, Suite 400
> Chicago, IL 60654-3386

3.      The Claim Amount represents the unpaid contract price due Claimant, or, in the alternative, is the reasonable value of the unpaid portion of Claimant's labor and materials furnished, which are described below.

4.      Claimant's labor and materials furnished for construction of improvements on the real property described below are generally described as labor and materials to install and repair duct work, air handlers, and related HVAC systems at the project. Payment of the Claim Amount is requested for work performed or materials furnished during each of the following months: November and December, 2011; and January through February, 2012.

5.      Claimant furnished the above-described labor and materials under a purchase order with the authorized agent of Persimmon Ridge Partnership EO LP c/o Flanagan/Bilton, LLC, whose last known address is:

> Persimmon Ridge Partnership EO LP c/o Flanagan/Bilton, LLC
> 500 North Dearborn Street, Suite 400
> Chicago, Illinois 60654

Page 1

591

6.    The name and last known address of the original contractor on the above-referenced project is: Stowe's Independent Services, LLC, 1951 E. Continental Boulevard, Southlake, Texas 76092.

7.    The legal description of the real property improved by Claimant's above-described labor and materials is:

Western-Air Addition, Lot 001 Block 001, City of Amarillo, Randall County, Texas, and more commonly known as 4615 S. Virginia Street, Amarillo, Texas.

That real property and improvements on it are sought to be charged with Claimant's lien.

8.    Claimant claims a mechanic's and materialman's lien on the above-described real property and improvements thereon to secure payment of its Claim Amount in accordance with Chapter 53 of the Texas Property Code and pursuant to Article 16, Section 37 of the Texas Constitution.

9.    Claimant's physical address is 1951 E. Continental Boulevard, Southlake, Texas 76092. Claimant's mailing address is P.O. Box 1254, Grapevine, Texas 76099.

10.    Claimant's notice of mechanic's lien was sent to Owner by United States certified mail, return receipt requested, on the following date: March 20, 2012.

11.    In compliance with the Texas Property Code, Claimant is sending one copy of this affidavit to Owner at its last known address and also one copy to the above-referenced original contractor at its last known address.

Stowe's Independent Services, LLC, a Texas limited liability company

David B. Stowe, Managing Member

SUBSCRIBED AND SWORN TO before me on March 20, 2012, by David B. Stowe.

DORENE E. HOLLMAN
MY COMMISSION EXPIRES
July 20, 2012

Notary Public, State of Texas

Page 2

592

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Renee Calhoun*

2012004877
03/21/2012 09:54 AM
Fee: 20.00
Renee Calhoun, County Clerk
Randall County, Texas
LC

## Affidavit Claiming Mechanic's and Materialman's Lien

Affiant, Anthony J. Givens, on oath swears that the following statements are true and are within the personal knowledge of Affiant:

My name is Anthony J. Givens. I am the President of PAVEMENT SERVICES CORPORATION ("Claimant"). This affidavit is made to perfect a mechanic's and materialman's lien against the real property described below:

1. Claimant has an unpaid claim in the amount of $166,312.00 ("Claim Amount") for labor and materials furnished on the construction of improvements generally known as the reconstruction of driveways, installation of speed bumps, installation of wheel stops, and pavement markings. The Claim Amount is, within my personal knowledge, just and true, the same is due and unpaid, and all just and lawful offsets, payments, and credits have been allowed. The Claim Amount is for labor and materials furnished and described below, on which a systematic record has been kept.

2. The name and last known address of the owner or reputed owner ("Owner") of the real property and improvements on which this claim is made are:

> PERSIMMON RIDGE PARTNERS EC, L.C.,
> a Texas limited liability company
> 6090 SURETY DR STE 102
> EL PASO TX 79905-2061

3. The Claim Amount represents the unpaid contract price due Claimant, or, in the alternative, is the reasonable value of the unpaid portion of Claimant's labor and materials furnished, which are described below.

4. Claimant's labor and materials furnished for construction of improvements on the real property described below are generally described as labor and materials. Payment of the Claim Amount is requested for work performed or materials furnished during each of the following months: July, 2010.

5. Claimant furnished the above-described labor and materials under a contract with C & K PAVING CONTRACTORS, INC., whose last known address is:

> C & K PAVING CONTRACTORS, INC.
> 141 RAILROAD ST STE 99
> CANTON GA 30114-3077

6. The name and last known address of the original contractor on the above-referenced project is:

1

Affidavit Claiming Mechanic's and Materialman's Lien

C & K PAVING CONTRACTORS, INC.
141 Railroad Street, Suite 99
Canton, Georgia 30114-3077

7.     The legal description of the real property improved by Claimant's above-described labor and materials is:

Lot No. 1, Block No. 1, Western-Air Addition, an Addition to the City of Amarillo, Randall County, Texas, according to the recorded map or plat thereof of record in Volume 568, Page 544, Deed Records of Randall County, Texas.

That real property and improvements on it are sought to be charged with Claimant's lien.

8.     Claimant claims a mechanic's and materialman's lien on the above-described real property and improvements thereon to secure payment of its Claim Amount in accordance with the Texas Property Code.

9.     Claimant's physical address is 4000 Tarrant Main, Euless, Texas 76039-1107. Claimant's mailing address is P.O. Box 1107, Euless, Texas 76039-1107.

10.     Claimant's notice of mechanic's lien was sent to Owner by United States certified mail, return receipt requested, on the following date:

a.  September 10, 2010.

11.     In compliance with the Texas Property Code, Claimant is sending one copy of this affidavit to Owner at its last known address and also one copy to the above-referenced original contractor at its last known address.

PAVEMENT SERVICES CORPORATION

Anthony J. Givens, President of PAVEMENT SERVICES CORPORATION

SUBSCRIBED AND SWORN TO before me on September 21st, 2010, by Anthony J. Givens, President of Pavement Services Corporation.

Notary Public, State of Texas

SANDRA S VECCHIO
NOTARY PUBLIC
State of Texas
Comm. Exp. 06/17/2013

Affidavit Claiming Mechanic's and Materialman's Lien

595

PREPARED IN THE OFFICE OF:

ROBERT D LYBRAND, P.C.
580 S. Denton Tap Road
Suite 280
Coppell, Texas 75019
Tel: (972) 393-1500
Fax: (972) 304-0072


AFTER RECORDING RETURN TO:

ROBERT D LYBRAND, P.C.
580 S. Denton Tap Road
Suite 280
Coppell, Texas 75019
Tel: (972) 393-1500
Fax: (972) 304-0072

FILED AND RECORDED

OFFICIAL PUBLIC RECORDS.

Renee Calhoun

September 27, 2010  09:05:34 AM    2010015474
FEE. $24.00
Renee Calhoun County Clerk
Randall County  TEXAS

Affidavit Claiming Mechanic's and Materialman's Lien [3]

596

# APPENDIX

# "Tab 3"

 LexisNexis®

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

PROPERTY CODE
TITLE 1.   GENERAL PROVISIONS
CHAPTER 1.   GENERAL PROVISIONS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

Tex. Prop. Code § 1.002   (2014)

§ 1.002.   Construction of Code

   The Code Construction Act (Chapter 311, Government Code) applies to the construction of each provision in this code, except as otherwise expressly provided by this code.

**HISTORY:** Enacted by Acts 1983, 68th Leg., ch. 576 (S.B. 748), § 1, effective January 1, 1984; am. Acts 1985, 69th Leg., ch. 479 (S.B. 813), § 70, effective September 1, 1985.

**NOTES:**

   Revisor's Notes. --
   This section states the obvious, but it should be helpful to those not familiar with the statutory revision program.

LexisNexis (R) Notes:

CASE NOTES

1. Legislation amending Tex. Prop. Code Ann. § 5.077(c) and enacting Tex. Prop. Code Ann. § 5.077(d), effective September 1, 2005, did not contain a savings clause addressing the effect of the amendments on penalties for violations occurring after September 1, 2001, but prior to September 1, 2005. However, Tex. Prop. Code Ann. § 1.002 provided that Tex. Gov't Code Ann. ch. 311 applied to the construction of each provision of the Texas Property Code, except as otherwise expressly provided by such code. McGee v. Caulfield, 2009 Tex. App. LEXIS 2999 (Tex. App. Houston 1st Dist. Apr. 30 2009).

2. Legislation amending Tex. Prop. Code Ann. § 5.077(c) and enacting Tex. Prop. Code Ann. § 5.077(d), effective September 1, 2005, did not contain a savings clause addressing the effect of the amendments on penalties for violations occurring after September 1, 2001, but prior to September 1, 2005. However, Tex. Prop. Code Ann. § 1.002 provided that Tex. Gov't Code Ann. ch. 311 applied to the construction of each provision of the Texas Property Code, except as otherwise expressly provided by such code. McGee v. Caulfield, 2009 Tex. App. LEXIS 2999 (Tex. App. Houston 1st Dist. Apr. 30 2009).

3. Company had a right to redeem the property, because a corporation was a person entitled to redeem property under the Texas Residential Property Owners Protection Act, when the word "person" was not defined in the Texas Residential Property Owners Act, and under the Code Construction Act, the definition of person applied, which included corporation. Khyber Holdings, LLC v. BAC Home Loans Servicing, LP, 349 S.W.3d 178, 2011 Tex. App. LEXIS 6581 (Tex. App. Dallas 2011).

4. Company had a right to redeem the property, because a corporation was a person entitled to redeem property under the Texas Residential Property Owners Protection Act, when the word "person" was not defined in the Texas Residential Property Owners Act, and under the Code Construction Act, the definition of person applied, which included corporation. Khyber Holdings, LLC v. BAC Home Loans Servicing, LP, 349 S.W.3d 178, 2011 Tex. App. LEXIS 6581 (Tex. App. Dallas 2011).

# APPENDIX

# "Tab 4"

 LexisNexis®

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

GOVERNMENT CODE
TITLE 3. LEGISLATIVE BRANCH
SUBTITLE B. LEGISLATION
CHAPTER 311. CODE CONSTRUCTION ACT
SUBCHAPTER A. GENERAL PROVISIONS

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

Tex. Gov't Code § 311.005 (2014)

§ 311.005. General Definitions

The following definitions apply unless the statute or context in which the word or phrase is used requires a different definition:

(1) "Oath" includes affirmation.

(2) "Person" includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity.

(3) "Population" means the population shown by the most recent federal decennial census.

(4) "Property" means real and personal property.

(5) "Rule" includes regulation.

(6) "Signed" includes any symbol executed or adopted by a person with present intention to authenticate a writing.

(7) "State," when referring to a part of the United States, includes any state, district, commonwealth, territory, and insular possession of the United States and any area subject to the legislative authority of the United States of America.

(8) "Swear" includes affirm.

(9) "United States" includes a department, bureau, or other agency of the United States of America.

(10) "Week" means seven consecutive days.

(11) "Written" includes any representation of words, letters, symbols, or figures.

(12) "Year" means 12 consecutive months.

(13) "Includes" and "including" are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.

**HISTORY:** Enacted by Acts 1985, 69th Leg., ch. 479 (S.B. 813), § 1, effective September 1, 1985; am. Acts 1989, 71st Leg., ch. 340 (S.B. 1047), § 1, effective August 28, 1989.

LexisNexis (R) Notes:

CASE NOTES

1. Bankruptcy court properly found that business service agreements between debtors and orthodontists were void for illegality because they enabled the debtors to practice dentistry without a license under Tex. Occ. Code Ann. §§ 256.001 and 251.003(a)(4) in that persons included corporations such as the debtors under Tex. Gov't Code Ann. § 311.005(2). Crosby v. OrthAlliance New Image (In re OCA, Inc.), 552 F.3d 413, 2008 U.S. App. LEXIS 26509, 50 Bankr. Ct. Dec. (LRP) 277 (5th Cir. La. 2008).

2. Trial court did not err in issuing a permanent injunction against an assisted living facility and assessing $ 20,000 in civil penalties rendering judgment against the owner, as sole owner of the center and applicant for the renewal of its license, and awarding $ 20,000 in attorney's fees to state, where the facility operated for five months without a license. Health Enrichment & Longevity Inst., Inc. v. State, 2004 Tex. App. LEXIS 5094 (Tex. App. Austin June 10 2004), opinion withdrawn by, substituted opinion at 2004 Tex. App. LEXIS 6246 (Tex. App. Austin July 15, 2004).

3. Where intervenor land owners asserted claims under Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a) against plaintiff lender who had filed a fraudulent lien against their property, the lender was liable for $10,000 to each land owner and the other intervenor defendants, the seller of the mobile home to defendant borrowers and its parent company, was separately liable for $10,000 per lien per land owner, and because Tex. Gov't Code Ann. § 311.005(2) defined "person" to include a partnership, the lender's hypothetical, that if a partnership with 100 partners owned a piece of property a person filing a fraudulent lien would be liable for $1 million in damages, was wrong, because the partnership would receive only $10,000. Vanderbilt Mortg. & Fin. v. Flores, 692 F.3d 358, 2012 U.S. App. LEXIS 17875 (5th Cir. Tex. 2012).

4. Legislature's incorporation of the definition of "person" from Tex. Gov't Code Ann. § 311.005 into the water code did not constitute a clear and unambiguous waiver of immunity from suit for a violation of Tex. Water Code Ann. § 11.086(a); the incorporation created an ambiguity, which the court had to construe in a manner that retained the city's immunity. City of Keller v. Wilson, 2007 Tex. App. LEXIS 1459 (Tex. App. Fort Worth Mar. 1 2007).

5. Texas statutes clearly indicate that the legislature intended for a trust to be treated as a legal entity because: (1) pursuant to Tex. Gov't Code Ann. § 311.005(2), the Texas Code Construction Act specifies that a "person" includes a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity;" and (2) trusts are listed in numerous Texas statutes -- Tex. Prop. Code Ann. § 301.003(12); Tex. Ins. Code Ann. art. 1.10D, § (1)(a) and (4); and Tex. Health & Safety Code Ann. § 481.002(33) -- as a "person" subject to civil penalties; thus, Texas cases and statutory authority indicate that a trust may be sued. Ray Malooly Trust v. Juhl, 2004 Tex. App. LEXIS 5440 (Tex. App. El Paso June 17 2004).

6. In light of the definition the legislature has given the word "person" in Tex. Gov't Code Ann. § 311.005(2) of the Texas Code Construction Act, the fact that the legislature chose to use the word "individual" in Tex. Civ. Prac. & Rem. Code Ann. § 38.001, instead of the word "person," indicates a clear legislative intent to exclude government entities from those against whom attorney fees may be recovered under the statute. Moreover, the legislature in Tex. Loc. Gov't Code Ann. § 5.904(a) expressly exempted municipalities from being a "corporation" under § 38.001, and it would be incongruous to conclude that the legislature, nonetheless, meant to implicitly include municipalities under the term "individual." City of Corinth v. NuRock Dev., Inc., 293 S.W.3d 360, 2009 Tex. App. LEXIS 5939 (Tex. App. Fort Worth 2009).

7. Trial court did not err in issuing a permanent injunction against an assisted living facility and assessing $ 20,000 in civil penalties rendering judgment against the owner, as sole owner of the center and applicant for the renewal of its license, and awarding $ 20,000 in attorney's fees to state, where the facility operated for five months without a license. Health Enrichment & Longevity Inst., Inc. v. State, 2004 Tex. App. LEXIS 5094 (Tex. App. Austin June 10 2004), opinion withdrawn by, substituted opinion at 2004 Tex. App. LEXIS 6246 (Tex. App. Austin July 15, 2004).

8. Former public employee's cause of action under the Texas Wiretap Act, Tex. Civ. Prac. & Rem. Code Ann. ch. 123, was not dismissed based on the intentional tort exclusion and election of remedies provision in Tex. Civ. Prac. & Rem. Code Ann. § 101.003 of the Texas Tort Claims Act (TTCA), because the employee did not assert any tort claims under the TTCA; as noted by the former employee, the Texas Wiretap Act was fashioned after the Federal Wiretap Act, 18 U.S.C.S. § 2510 et seq. The Texas statute mirrored the federal statute in several respects and made reference to it; moreover, the definition of a "person" who could be sued under the Texas Wiretap Act included the government or a governmental subdivision or agency, which encompassed his former agency employer and its board of directors, who were the defendant in his suit. Garza v. Bexar Metro. Water Dist., 639 F. Supp. 2d 770, 2009 U.S. Dist. LEXIS 21613 (W.D. Tex. 2009).

9. Stalking indictment that did not contain the word "follow" sufficiently alleged an offense; because the term "including" is defined in Tex. Gov't Code Ann. § 311.005(13) as a term of enlargement rather than a term of exclusive enumeration, the phrase "including following the other person" in the stalking statute, Tex. Penal Code Ann. § 42.072(a), is an example of prohibited conduct and not a requirement of the offense. Medellin v. State, 2006 Tex. App. LEXIS 7867 (Tex. App. El Paso Aug. 31 2006).

10. Lawyer charged with tampering with a governmental record in violation of Tex. Penal Code Ann. § 37.10 because of false statements made in a petition for expunction was not entitled to quash the indictment on the ground that pleadings could not be governmental records within the meaning of Tex. Penal Code Ann. § 37.01; because "including" is a term of enlargement, as provided in Tex. Gov't Code Ann. § 311.005(13), the definition of a governmental record does not exclude a pleading. State v. Vasilas, 187 S.W.3d 486, 2006 Tex. Crim. App. LEXIS 577 (Tex. Crim. App. 2006), appeal dismissed in part by 2006 Tex. App. LEXIS 6967 (Tex. App. Dallas Aug. 8, 2006).

11. Tex. Gov't Code Ann. § 311.005(13) provided that "includes" and "including" were terms of enlargement and not of limitation or exclusive enumeration, and use of the terms did not create a presumption that components not expressed were excluded; thus, the first part of Tex. Gov't Code Ann. § 311.005(13) clearly showed that the legislature intended the term "including" to be one of enlargement and not limitation and the second part of Tex. Gov't Code Ann. § 311.005(13) made it clear that the term did not have the effect of creating a presumption against further inclusion of terms not expressly stated; accordingly, the legislature intended the term "including" in Tex. Code Crim. Proc. Ann. art.

42.12, § 13B(a)(1)(B) to be one of enlargement. Leach v. State, 170 S.W.3d 669, 2005 Tex. App. LEXIS 4614 (Tex. App. Fort Worth 2005).

12. According to the definition of "state" in Tex. Gov't Code Ann. § 311.005(7), defendant's sentence was properly enhanced to life imprisonment under Tex. Penal Code Ann. §/Aa12.42(c)(2)(B)(v) with his prior UCMJ sex-offense convictions; defendant's prior convictions constituted convictions under the laws of another state, § 12.42(c)(2)(B)(v). Rushing v. State, 353 S.W.3d 863, 2011 Tex. Crim. App. LEXIS 1345 (Tex. Crim. App. 2011).

13. Although Tex. Code Crim. Proc. Ann. art. 42.12 itself does not define "state," the Code Construction Act, defines "state" to include Puerto Rico pursuant to Tex. Gov't Code Ann. § 311.005, and 48 U.S.C.S. § 734. Additionally, the code of criminal procedure elsewhere adopts definitions of "state" that include Puerto Rico, for example, Tex. Code Crim. Proc. Ann. arts. 24.29 and 42.19, and Tex. Gov't Code Ann. § 311.011(b). Robles v. State, 141 S.W.3d 250, 2004 Tex. App. LEXIS 5787 (Tex. App. Austin 2004).

14. Where defendant was found guilty of aggravated assault with a deadly weapon, and he had a prior felony conviction from Puerto Rico, the trial court did not err in enhancing his sentence because Puerto Rico was a state for the purposes of the Texas penal code. Robles v. State, 141 S.W.3d 250, 2004 Tex. App. LEXIS 5787 (Tex. App. Austin 2004).

15. The holder of an overriding royalty interest was an 'affected person" entitled to the notice provision of Tex. Nat. Res. Code Ann. § 85.241 because the types of interests included were not exclusive, pursuant to Tex. Gov't Code Ann. § 311.005. H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 2000 Tex. App. LEXIS 7557, 151 Oil & Gas Rep. 265 (Tex. App. Austin 2000).

16. Gas utilities and pipeline companies have the power to condemn rail district property and to run pipelines under the railroads. Accordingly, a trial court properly denied pleas to jurisdiction filed by the Cen-Tex Rural Rail Transportation District (Texas) and a railroad company in three separate pipeline condemnation cases brought against them because: (1) Cen-Tex is a "person" whose property could be condemned by a gas corporation or common carrier under Tex. Util. Code Ann. § 181.004 and Tex. Nat. Res. Code Ann. § 111.019, respectively; (2) the history of former Tex. Util. Code Ann. § 181.005, the legislature's objectives for it and its predecessor, and the circumstances under which both versions of the statute were enacted evidence a legislative intent that gas corporations be allowed to lay pipelines under railroads; and (3) because railroads were public highways under Tex. Const. art. X, § 2, the utilities and pipeline companies possessed additional statutory authority to lay pipelines under railroads by virtue of Tex. Util. Code Ann. § 181.022. Fort Worth & Western R.R. Co. v. Enbridge, 298 S.W.3d 392, 2009 Tex. App. LEXIS 7761 (Tex. App. Fort Worth 2009).

17. Provision that sets forth the persons to whom notice must be given when an applicant seeks an exception to minimum lease-line spacing, 16 Tex. Admin. Code § 3.37(a)(2)(A), does not establish an exclusive list of interests entitled to notice. The Railroad Commission of Texas's use of the word "include" in the provision signifies that the list is not exclusive. Tex. Gov't Code Ann. § 311.005(13). H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 2000 Tex. App. LEXIS 7557, 151 Oil & Gas Rep. 265 (Tex. App. Austin 2000).

18. Where the term personal representative includes executors and administrators, Tex. Prob. Code Ann. § 3(aa) does not signify that the list is exclusive. Lovato v. Austin Nursing Ctr., 2003 Tex. App. LEXIS 2507 (Tex. App. Austin Mar. 27 2003), opinion withdrawn by, substituted opinion at 113 S.W.3d 45, 2003 Tex. App. LEXIS 4725 (Tex. App. Austin 2003).

19. Texas statutes clearly indicate that the legislature intended for a trust to be treated as a legal entity because: (1) pursuant to Tex. Gov't Code Ann. § 311.005(2), the Texas Code Construction Act specifies that a "person" includes a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity;" and (2) trusts are listed in numerous Texas statutes -- Tex. Prop. Code Ann. § 301.003(12); Tex. Ins. Code Ann. art. 1.10D, § (1)(a) and (4); and Tex. Health & Safety Code Ann. § 481.002(33) -- as a "person" subject to civil penalties; thus, Texas cases and statutory authority indicate that a trust may be sued. Ray Malooly Trust v. Juhl, 2004 Tex. App. LEXIS 5440 (Tex. App. El Paso June 17 2004).

20. County hospital district's immunity from suit from the supplier's breach of contract claim had been waived by Tex. Loc. Gov't Code Ann. § 271.152, because the district was a special purpose district and special purpose districts were expressly included in the definition of a local governmental entity; the legislature clearly and unambiguously intended to waive the district's immunity from suit for contractual claims. Dallas County Hosp. Dist. v. Hospira Worldwide, Inc., 400 S.W.3d 182, 2013 Tex. App. LEXIS 5363 (Tex. App. Dallas 2013).

21. Reference to partnership and unincorporated association income in Tex. Const. art. VIII, § 24(a) is an explanatory phrase modifying the phrase the net incomes of natural persons, for purposes of Tex. Gov't Code § 311.005(13); simply put, under Texas law the entity theory applies to partnership income and profits, and individual partners do not own any of either while they remain in the partnership's hands and have not been distributed to the partners, for purposes of Tex. Bus. Orgs. Code Ann. § 152.056, and while a partner's interest in the partnership represents the right to receive the partner's share of partnership profits when they are distributed, it does not follow that for purposes of the Texas franchise tax such right constitutes a partner's "share" of any partnership income or profits while the partnership retains the income and profits without having distributed any of them to the partner. In re Allcat Claims Serv., L.P., 356 S.W.3d 455, 2011 Tex. LEXIS 896, 55 Tex. Sup. Ct. J. 103 (Tex. 2011).

22. Governmental immunity barred a water district's claim against a city for past due fees, penalties, and costs for water that the city had transported from the district because Tex. Water Code Ann. § 36.102(a) does not authorize a suit against a municipality and because the permit requirement in Tex. Water Code Ann § 36.115, when construed in accordance with Tex. Gov't Code Ann. § 311.005(2) to include a municipality, does not waive governmental immunity from a suit for money damages absent a clear and unambiguous waiver of immunity as contemplated by Tex. Gov't Code Ann. § 311.034. Rolling Plains Groundwater Conservation Dist. v. City of Aspermont, 353 S.W.3d 756, 2011 Tex. LEXIS 802, 55 Tex. Sup. Ct. J. 40 (Tex. 2011).

23. Company had a right to redeem the property, because a corporation was a person entitled to redeem property under the Texas Residential Property Owners Protection Act, when the word "person" was not defined in the Texas Residential Property Owners Act, and under the Code Construction Act, the definition of person applied, which included corporation. Khyber Holdings, LLC v. BAC Home Loans Servicing, LP, 349 S.W.3d 178, 2011 Tex. App. LEXIS 6581 (Tex. App. Dallas 2011).

24. Workers' compensation carrier could be a subclaimant under Tex. Lab. Code Ann. § 409.009, because a workers' compensation carrier was a person under Tex. Lab. Code Ann. § 409.009, and Tex. Gov't Code Ann. § 311.005(2) defined person to include a corporation, organization, and any other legal entity. Serv. Lloyds Ins. Co. v. Am. Alternative Ins. Corp., 306 S.W.3d 414, 2010 Tex. App. LEXIS 1361 (Tex. App. Austin 2010).

25. In light of the definition the legislature has given the word "person" in Tex. Gov't Code Ann. § 311.005(2) of the Texas Code Construction Act, the fact that the legislature chose to use the word "individual" in Tex. Civ. Prac. & Rem. Code Ann. § 38.001, instead of the word "person," indicates a clear legislative intent to exclude government entities from those against whom attorney fees may be recovered under the statute. Moreover, the legislature in Tex. Loc. Gov't Code Ann. § 5.904(a) expressly exempted municipalities from being a "corporation" under § 38.001, and it would be incongruous to conclude that the legislature, nonetheless, meant to implicitly include municipalities under the term "individual." City of Corinth v. NuRock Dev., Inc., 293 S.W.3d 360, 2009 Tex. App. LEXIS 5939 (Tex. App. Fort Worth 2009).

26. Word "including" in 28 Tex. Admin. Code § 3.4401(a)(1)(B) must be construed as a term of enlargement, signifying a non-exhaustive list under Tex. Gov't Code Ann. § 311.005(13). Therefore, the exception from assessments by the Texas Health Insurance Risk Pool for "other limited benefit coverage, including specified disease coverage," in Rule 3.4401 is not solely limited to specified disease coverage, but includes additional types of limited benefit coverage. Tex. Health Ins. Risk Pool v. Southwest Serv. Life Ins. Co., 272 S.W.3d 797, 2008 Tex. App. LEXIS 9276 (Tex. App. Austin 2008).

27. Under Tex. Tax Code Ann. § 111.016(a), a company was obligated to remit to the State sales tax collected from its clients on taxable jobs; in addition, the company held the collected sales tax in trust for the State until the taxes were remitted to the State, and the court noted that the term person was generally defined, for purposes of Tex. Tax Code Ann. § 101.002(a), Tex. Gov't Code Ann. § 311.005(2), to cover business entities. State v. Crawford, 262 S.W.3d 532, 2008 Tex. App. LEXIS 6464 (Tex. App. Austin 2008).

28. Stalking indictment that did not contain the word "follow" sufficiently alleged an offense; because the term "including" is defined in Tex. Gov't Code Ann. § 311.005(13) as a term of enlargement rather than a term of exclusive enumeration, the phrase "including following the other person" in the stalking statute, Tex. Penal Code Ann. § 42.072(a), is an example of prohibited conduct and not a requirement of the offense. Medellin v. State, 2006 Tex. App. LEXIS 7867 (Tex. App. El Paso Aug. 31 2006).

29. The use of the word "includes" in Tex. Tax Code Ann. § 11.182(e) did not entitle taxpayers to an exemption for a building constructed before the operative date; Tex. Gov't Code Ann. § 311.005 did not require such an expansive reading of the word "includes," such a construction would be contrary to the requirement of Tex. Gov't Code Ann. § 311.011(a) that words be read in context and construed according to the rules of grammar and common usage, and under Tex. Gov't Code Ann. § 311.022, statutes are presumed to be prospective in their operation unless expressly made retrospective. Am. Hous. Found. v. Calhoun County Appraisal Dist., 198 S.W.3d 816, 2006 Tex. App. LEXIS 6629 (Tex. App. Corpus Christi 2006).

30. Lawyer charged with tampering with a governmental record in violation of Tex. Penal Code Ann. § 37.10 because of false statements made in a petition for expunction was not entitled to quash the indictment on the ground that pleadings could not be governmental records within the meaning of Tex. Penal Code Ann. § 37.01; because "including" is a term of enlargement, as provided in Tex. Gov't Code Ann. § 311.005(13), the definition of a governmental record does not exclude a pleading. State v. Vasilas, 187 S.W.3d 486, 2006 Tex. Crim. App. LEXIS 577 (Tex. Crim. App. 2006), appeal dismissed in part by 2006 Tex. App. LEXIS 6967 (Tex. App. Dallas Aug. 8, 2006).

31. Tex. Gov't Code Ann. § 311.005(13) provided that "includes" and "including" were terms of enlargement and not of limitation or exclusive enumeration, and use of the terms did not create a presumption that components not expressed were excluded; thus, the first part of Tex. Gov't Code Ann. § 311.005(13) clearly showed that the legislature intended the term "including" to be one of enlargement and not limitation and the second part of Tex. Gov't Code Ann. § 311.005(13) made it clear that the term did not have the effect of creating a presumption against further inclusion of terms not expressly stated; accordingly, the legislature intended the term "including" in Tex. Code Crim. Proc. Ann. art. 42.12, § 13B(a)(1)(B) to be one of enlargement. Leach v. State, 170 S.W.3d 669, 2005 Tex. App. LEXIS 4614 (Tex. App. Fort Worth 2005).

32. Although Tex. Code Crim. Proc. Ann. art. 42.12 itself does not define "state," the Code Construction Act, defines "state" to include Puerto Rico pursuant to Tex. Gov't Code Ann. § 311.005, and 48 U.S.C.S. § 734. Additionally, the code of criminal procedure elsewhere adopts definitions of "state" that include Puerto Rico, for example, Tex. Code Crim. Proc. Ann. arts. 24.29 and 42.19, and Tex. Gov't Code Ann. § 311.011(b). Robles v. State, 141 S.W.3d 250, 2004 Tex. App. LEXIS 5787 (Tex. App. Austin 2004).

33. Where defendant was found guilty of aggravated assault with a deadly weapon, and he had a prior felony conviction from Puerto Rico, the trial court did not err in enhancing his sentence because Puerto Rico was a state for the purposes of the Texas penal code. Robles v. State, 141 S.W.3d 250, 2004 Tex. App. LEXIS 5787 (Tex. App. Austin 2004).

34. Where the term personal representative includes executors and administrators, Tex. Prob. Code Ann. § 3(aa) does not signify that the list is exclusive. Lovato v. Austin Nursing Ctr., 2003 Tex. App. LEXIS 2507 (Tex. App. Austin Mar. 27 2003), opinion withdrawn by, substituted opinion at 113 S.W.3d 45, 2003 Tex. App. LEXIS 4725 (Tex. App. Austin 2003).

35. The holder of an overriding royalty interest was an 'affected person" entitled to the notice provision of Tex. Nat. Res. Code Ann. § 85.241 because the types of interests included were not exclusive, pursuant to Tex. Gov't Code Ann. § 311.005. H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 2000 Tex. App. LEXIS 7557, 151 Oil & Gas Rep. 265 (Tex. App. Austin 2000).

36. Provision that sets forth the persons to whom notice must be given when an applicant seeks an exception to minimum lease-line spacing, 16 Tex. Admin. Code § 3.37(a)(2)(A), does not establish an exclusive list of interests entitled to notice. The Railroad Commission of Texas's use of the word "include" in the provision signifies that the list is not exclusive. Tex. Gov't Code Ann. § 311.005(13). H. G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 2000 Tex. App. LEXIS 7557, 151 Oil & Gas Rep. 265 (Tex. App. Austin 2000).

37. Pursuant to Code Construction Act, Tex. Gov't. Code Ann. § 311.005(2); Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2) (A)--(B); Tex. Tax Code Ann. §§ 101.003, 111.104, 111.107, 111.0021, 111.0022, 112.001, and 112.151, where a county collects fees pursuant to Tex. Code Crim. P. Ann. art. 102.011, the county must file any suit for the return of overpayment by the state comptroller in Travis County. Cornyn v. County of Hill, 10 S.W.3d 424, 2000 Tex. App. LEXIS 598 (Tex. App. Waco 2000).

38. Under Tex. Gov't Code Ann. § 311.005(13) includes and including are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded. Grunsfeld v. State, 843 S.W.2d 521, 1992 Tex. Crim. App. LEXIS 201 (Tex. Crim. App. 1992), questioned by Flores v. State, 884 S.W.2d 784, 1994 Tex. Crim. App. LEXIS 107 (Tex. Crim. App. 1994), questioned by Meadows v. State, 998 S.W.2d 318, 1999 Tex. App. LEXIS 5387, 1999:30 Tex. Crim. Op. Serv. 3 (Tex. App. Houston 1st Dist. 1999), questioned by Peters v. State, 1999 Tex. App. LEXIS 5266 (Tex. App. San Antonio July 14, 1999), questioned by Foster v. State, 1999 Tex. App. LEXIS 3077 (Tex. App. Dallas Apr. 23, 1999), questioned by Nichols v. State, 1998 Tex. App. LEXIS 4767 (Tex. App. Texarkana Aug. 6, 1998), questioned by Benitez v. State, 1997 Tex. App. LEXIS 5859 (Tex. App. Houston 1st Dist. Oct. 30, 1997), questioned by Haney v. State, 951 S.W.2d 551, 1997 Tex. App. LEXIS 4852, 97:38 Tex. Crim. Op. Serv. 57 (Tex. App. Waco 1997), questioned by Brooks v. State, 961 S.W.2d 396, 1997 Tex. App. LEXIS 4331, 97:34 Tex. Crim. Op. Serv. 15 (Tex. App. Houston 1st Dist. 1997), questioned by Washington v. State, 943 S.W.2d 501, 1997 Tex. App. LEXIS 1193, 96:48 Tex. Crim. Op. Serv. 55 (Tex. App. Fort Worth 1997), questioned by Yates v. State, 917 S.W.2d 915, 1996 Tex. App. LEXIS 817, 96:11 Tex. Crim. Op. Serv. 143 (Tex. App. Corpus Christi 1996), questioned by Hubbard v. State, 903 S.W.2d 892, 1995 Tex. App. LEXIS 1748 (Tex. App. Fort Worth 1995), criticized in Montez v. State, 1995 Tex. App. LEXIS 351 (Tex. App. Houston 14th Dist. Feb. 23, 1995), questioned by Mitchell v. State, 892 S.W.2d 213, 1995 Tex. App. LEXIS 15, 95:3 Tex. Crim. Op. Serv. 113 (Tex. App. Texarkana 1995).

39. Municipalities are subject to liability for fraud in real estate transactions under Tex. Bus. & Com. Code Ann. § 27.01 even though the term "person" is not defined in § 27.01, because the Code Construction Act, Tex. Gov't. Code Ann. § 311.005(2) defines the term "person" to include government or governmental subdivisions or agencies. Kerrville HRH, Inc. v. City of Kerrville, 803 S.W.2d 377, 1990 Tex. App. LEXIS 3191 (Tex. App. San Antonio 1990).

40. County hospital district's immunity from suit from the supplier's breach of contract claim had been waived by Tex. Loc. Gov't Code Ann. § 271.152, because the district was a special purpose district and special purpose districts were expressly included in the definition of a local governmental entity; the legislature clearly and unambiguously intended to waive the district's immunity from suit for contractual claims. Dallas County Hosp. Dist. v. Hospira Worldwide, Inc., 400 S.W.3d 182, 2013 Tex. App. LEXIS 5363 (Tex. App. Dallas 2013).

41. Governmental immunity barred a water district's claim against a city for past due fees, penalties, and costs for water that the city had transported from the district because Tex. Water Code Ann. § 36.102(a) does not authorize a suit

against a municipality and because the permit requirement in Tex. Water Code Ann § 36.115, when construed in accordance with Tex. Gov't Code Ann. § 311.005(2) to include a municipality, does not waive governmental immunity from a suit for money damages absent a clear and unambiguous waiver of immunity as contemplated by Tex. Gov't Code Ann. § 311.034. Rolling Plains Groundwater Conservation Dist. v. City of Aspermont, 353 S.W.3d 756, 2011 Tex. LEXIS 802, 55 Tex. Sup. Ct. J. 40 (Tex. 2011).

42. Regional transportation authorities created under Tex. Transp. Code Ann. §§ 452.001-.720 enjoyed governmental immunity from an electric company's condemnation suit filed under Tex. Util. Code Ann. § 181.004 to obtain an easement for an electric transmission line; the use of "person" in Tex. Util. Code Ann. § 181.004, as defined by Tex. Gov't Code Ann. § 311.005 to include governmental entities, did not indicate legislative intent to waive sovereign immunity. Therefore, the transportation authorities' governmental immunity rights were not waived by the legislature's grant of eminent domain power to the electric company. Dallas Area Rapid Transit v. Oncor Elec. Delivery Co. Llc, 331 S.W.3d 91, 2010 Tex. App. LEXIS 10104 (Tex. App. Dallas 2010).

43. Public transportation service providers were entitled to a plea to the jurisdiction in the eminent domain proceeding filed by the utility company, because the suit was barred by governmental immunity and governmental immunity was not waived, when the service providers were regional transportation authorities created under Tex. Transp. Code Ann. ch. 452, the Texas Legislature specifically stated that the use of the word "person" did not waive governmental immunity, and although the language of Tex. Util. Code Ann. § 181.004 provided condemnation power in general terms, that language did not clearly and unambiguously identify waiver of immunity. Dallas Area Rapid Transit v. Oncor Elec. Delivery Co. Llc, 2010 Tex. App. LEXIS 5994 (Tex. App. Dallas July 29 2010).

44. Texas Water Code's incorporation of the definition of "person" from Tex. Gov't Code Ann. § 311.005 does not waive a governmental entity's immunity beyond doubt. Therefore, a city's plea to the jurisdiction should have been granted in a case where an owner contended that she was damaged due to a violation of Tex. Water Code Ann. § 11.086 after the construction of a drainage detention pond by a developer's contractor since there was no express waiver of immunity, joinder of the city was not required, and there was no limitation on the city's liability in § 11.086. City of Midlothian v. Black, 271 S.W.3d 791, 2008 Tex. App. LEXIS 8369 (Tex. App. Waco 2008).

45. According to the definition of "state" in Tex. Gov't Code Ann. § 311.005(7), defendant's sentence was properly enhanced to life imprisonment under Tex. Penal Code Ann. §/Aa12.42(c)(2)(B)(v) with his prior UCMJ sex-offense convictions; defendant's prior convictions constituted convictions under the laws of another state, § 12.42(c)(2)(B)(v). Rushing v. State, 353 S.W.3d 863, 2011 Tex. Crim. App. LEXIS 1345 (Tex. Crim. App. 2011).

46. List in the definition of "health care provider" provided by Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(12) is not an exclusive list under Tex. Gov't Code Ann § 311.005(13) because the list uses the word "including." Thus, a drug and alcohol treatment facility was not excluded and was a health care provider as defined by the Civil Practice and Remedies Code. Christus Health v. Beal, 240 S.W.3d 282, 2007 Tex. App. LEXIS 5924 (Tex. App. Houston 1st Dist. 2007).

47. Bankruptcy court properly found that business service agreements between debtors and orthodontists were void for illegality because they enabled the debtors to practice dentistry without a license under Tex. Occ. Code Ann. §§ 256.001 and 251.003(a)(4) in that persons included corporations such as the debtors under Tex. Gov't Code Ann. § 311.005(2). Crosby v. OrthAlliance New Image (In re OCA, Inc.), 552 F.3d 413, 2008 U.S. App. LEXIS 26509, 50 Bankr. Ct. Dec. (LRP) 277 (5th Cir. La. 2008).

48. Trial court did not err in issuing a permanent injunction against an assisted living facility and assessing $ 20,000 in civil penalties rendering judgment against the owner, as sole owner of the center and applicant for the renewal of its license, and awarding $ 20,000 in attorney's fees to state, where the facility operated for five months without a license.

Health Enrichment & Longevity Inst., Inc. v. State, 2004 Tex. App. LEXIS 5094 (Tex. App. Austin June 10 2004), opinion withdrawn by, substituted opinion at 2004 Tex. App. LEXIS 6246 (Tex. App. Austin July 15, 2004).

49. Word "including" in 28 Tex. Admin. Code § 3.4401(a)(1)(B) must be construed as a term of enlargement, signifying a non-exhaustive list under Tex. Gov't Code Ann. § 311.005(13). Therefore, the exception from assessments by the Texas Health Insurance Risk Pool for "other limited benefit coverage, including specified disease coverage," in Rule 3.4401 is not solely limited to specified disease coverage, but includes additional types of limited benefit coverage. Tex. Health Ins. Risk Pool v. Southwest Serv. Life Ins. Co., 272 S.W.3d 797, 2008 Tex. App. LEXIS 9276 (Tex. App. Austin 2008).

50. Economic development corporation, which an employee sued because of alleged harassment, was a state instrumentality under the Texas Commission on Human Rights Act (TCHRA); thus, the agency was an employer. Purdin v. Copperas Cove Econ. Dev. Corp., 143 S.W.3d 290, 2004 Tex. App. LEXIS 6602 (Tex. App. Waco 2004).

51. Economic development corporation, which an employee sued because of alleged harassment, was a state instrumentality under the Texas Commission on Human Rights Act (TCHRA); thus, the agency was an employer. Purdin v. Copperas Cove Econ. Dev. Corp., 143 S.W.3d 290, 2004 Tex. App. LEXIS 6602 (Tex. App. Waco 2004).

52. When a sheriff's sale purchaser of foreclosed land claimed the land's occupier occupied the land under a fraudulent deed, and the occupier's counterclaim sought a declaratory judgment voiding the sale at which the purchaser bought the land, summary judgment in favor of the purchaser did not fail to dispose of the counterclaim because (1) the purchaser said the counterclaim was not viable as the "person" buying the land had to file a tax certificate, which "person" was not a corporate entity's member or shareholder, under Tex. Tax Code Ann. § 34.015(b)(1) and (2) and Tex. Gov't Code Ann. § 311.005(2), and (2) the occupier argued no other construction, so the trial court necessarily denied the counterclaim. Brewer v. Green Lizard Holdings, L.L.C., 406 S.W.3d 399, 2013 Tex. App. LEXIS 8919 (Tex. App. Fort Worth 2013).

53. Company had a right to redeem the property, because a corporation was a person entitled to redeem property under the Texas Residential Property Owners Protection Act, when the word "person" was not defined in the Texas Residential Property Owners Act, and under the Code Construction Act, the definition of person applied, which included corporation. Khyber Holdings, LLC v. BAC Home Loans Servicing, LP, 349 S.W.3d 178, 2011 Tex. App. LEXIS 6581 (Tex. App. Dallas 2011).

54. Where intervenor land owners asserted claims under Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a) against plaintiff lender who had filed a fraudulent lien against their property, the lender was liable for $10,000 to each land owner and the other intervenor defendants, the seller of the mobile home to defendant borrowers and its parent company, was separately liable for $10,000 per lien per land owner, and because Tex. Gov't Code Ann. § 311.005(2) defined "person" to include a partnership, the lender's hypothetical, that if a partnership with 100 partners owned a piece of property a person filing a fraudulent lien would be liable for $1 million in damages, was wrong, because the partnership would receive only $10,000. Vanderbilt Mortg. & Fin. v. Flores, 692 F.3d 358, 2012 U.S. App. LEXIS 17875 (5th Cir. Tex. 2012).

55. Texas Water Code's incorporation of the definition of "person" from Tex. Gov't Code Ann. § 311.005 does not waive a governmental entity's immunity beyond doubt. Therefore, a city's plea to the jurisdiction should have been granted in a case where an owner contended that she was damaged due to a violation of Tex. Water Code Ann. § 11.086 after the construction of a drainage detention pond by a developer's contractor since there was no express waiver of immunity, joinder of the city was not required, and there was no limitation on the city's liability in § 11.086. City of Midlothian v. Black, 271 S.W.3d 791, 2008 Tex. App. LEXIS 8369 (Tex. App. Waco 2008).

56. Under the Tex. Gov't Code Ann. § 311.005, a city is included in the definition of "person,", and therefore city had the right to appeal under Tex. Loc. Gov't Code Ann. § 211.011 as "a person aggrieved by a decision of the board." Wende v. Board of Adjustment of San Antonio, 27 S.W.3d 162, 2000 Tex. App. LEXIS 4808 (Tex. App. San Antonio 2000), reversed by 92 S.W.3d 424, 2002 Tex. LEXIS 56, 45 Tex. Sup. Ct. J. 674 (Tex. 2002).

57. Pursuant to Code Construction Act, Tex. Gov't. Code Ann. § 311.005(2); Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2) (A)-(B); Tex. Tax Code Ann. §§ 101.003, 111.104, 111.107, 111.0021, 111.0022, 112.001, and 112.151 where a county collects fees pursuant to Tex. Code Crim. P. Ann. art. 102.011, the county must file any suit for the return of overpayment by the state comptroller in Travis County. Cornyn v. County of Hill, 10 S.W.3d 424, 2000 Tex. App. LEXIS 598 (Tex. App. Waco 2000).

58. The use of the word "includes" in Tex. Tax Code Ann. § 11.182(e) did not entitle taxpayers to an exemption for a building constructed before the operative date; Tex. Gov't Code Ann. § 311.005 did not require such an expansive reading of the word "includes," such a construction would be contrary to the requirement of Tex. Gov't Code Ann. § 311.011(a) that words be read in context and construed according to the rules of grammar and common usage, and under Tex. Gov't Code Ann. § 311.022, statutes are presumed to be prospective in their operation unless expressly made retrospective. Am. Hous. Found. v. Calhoun County Appraisal Dist., 198 S.W.3d 816, 2006 Tex. App. LEXIS 6629 (Tex. App. Corpus Christi 2006).

59. Laboratories were physicians as defined in Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(23). The court reasoned in part that the current definition of "health care provider" was not an exclusive list because it used the word "including," which made the list nonexclusive under Tex. Gov't Code Ann § 311.005(13). Pro Path Servs., L.L.P. v. Koch, 192 S.W.3d 667, 2006 Tex. App. LEXIS 3291 (Tex. App. Dallas 2006).

60. Laboratories were physicians as defined in Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(23); the court reasoned in part that the current definition of "health care provider" was not an exclusive list because it used the word "including," which made the list nonexclusive under Tex. Gov't Code Ann § 311.005. Pro Path Servs., L.L.P. v. Koch, 192 S.W.3d 667, 2006 Tex. App. LEXIS 3291 (Tex. App. Dallas 2006).

61. Trial court did not incorrectly calculate two-year personal injury limitations period when it determined that the limitations period expired on February 25, 2004, for a personal injury cause of action that accrued on February 25, 2002; thus, summary judgment against appellants, who filed on the 26th, was proper. Salahat v. Kincaid, 195 S.W.3d 342, 2006 Tex. App. LEXIS 4550 (Tex. App. Fort Worth 2006).

62. Municipalities are subject to liability for fraud in real estate transactions under Tex. Bus. & Com. Code Ann. § 27.01 even though the term "person" is not defined in § 27.01, because the Code Construction Act, Tex. Gov't. Code

Ann. § 311.005(2) defines the term "person" to include government or governmental subdivisions or agencies. Kerrville HRH, Inc. v. City of Kerrville, 803 S.W.2d 377, 1990 Tex. App. LEXIS 3191 (Tex. App. San Antonio 1990).

63. Former public employee's cause of action under the Texas Wiretap Act, Tex. Civ. Prac. & Rem. Code Ann. ch. 123, was not dismissed based on the intentional tort exclusion and election of remedies provision in Tex. Civ. Prac. & Rem. Code Ann. § 101.003 of the Texas Tort Claims Act (TTCA), because the employee did not assert any tort claims under the TTCA; as noted by the former employee, the Texas Wiretap Act was fashioned after the Federal Wiretap Act, 18 U.S.C.S. § 2510 et seq. The Texas statute mirrored the federal statute in several respects and made reference to it; moreover, the definition of a "person" who could be sued under the Texas Wiretap Act included the government or a governmental subdivision or agency, which encompassed his former agency employer and its board of directors, who were the defendant in his suit. Garza v. Bexar Metro. Water Dist., 639 F. Supp. 2d 770, 2009 U.S. Dist. LEXIS 21613 (W.D. Tex. 2009).

64. Regional transportation authorities created under Tex. Transp. Code Ann. §§ 452.001-.720 enjoyed governmental immunity from an electric company's condemnation suit filed under Tex. Util. Code Ann. § 181.004 to obtain an easement for an electric transmission line; the use of "person" in Tex. Util. Code Ann. § 181.004, as defined by Tex. Gov't Code Ann. § 311.005 to include governmental entities, did not indicate legislative intent to waive sovereign immunity. Therefore, the transportation authorities' governmental immunity rights were not waived by the legislature's grant of eminent domain power to the electric company. Dallas Area Rapid Transit v. Oncor Elec. Delivery Co. Llc, 331 S.W.3d 91, 2010 Tex. App. LEXIS 10104 (Tex. App. Dallas 2010).

65. Gas utilities and pipeline companies have the power to condemn rail district property and to run pipelines under the railroads. Accordingly, a trial court properly denied pleas to jurisdiction filed by the Cen-Tex Rural Rail Transportation District (Texas) and a railroad company in three separate pipeline condemnation cases brought against them because: (1) Cen-Tex is a "person" whose property could be condemned by a gas corporation or common carrier under Tex. Util. Code Ann. § 181.004 and Tex. Nat. Res. Code Ann. § 111.019, respectively; (2) the history of former Tex. Util. Code Ann. § 181.005, the legislature's objectives for it and its predecessor, and the circumstances under which both versions of the statute were enacted evidence a legislative intent that gas corporations be allowed to lay pipelines under railroads; and (3) because railroads were public highways under Tex. Const. art. X, § 2, the utilities and pipeline companies possessed additional statutory authority to lay pipelines under railroads by virtue of Tex. Util. Code Ann. § 181.022. Fort Worth & Western R.R. Co. v. Enbridge, 298 S.W.3d 392, 2009 Tex. App. LEXIS 7761 (Tex. App. Fort Worth 2009).

LAW REVIEWS

1. 59 Tex. B. J. 314, ARTICLE: ESTATE PLANS: THE DURABLE POWER OF ATTORNEY FOR PROPERTY MANAGEMENT, By Gerry W. Beyer, April, 1996, Copyright (c) 1996 by State Bar of Texas, Texas Bar Journal.

2. 63 Tex. B. J. 543, FEATURE: STATE BAR OF TEXAS UNAUTHORIZED PRACTICE OF LAW TASK FORCE: PRELIMINARY RECOMMENDATION OF A NEW STATUTORY DEFINITION FOR THE "PRACTICE OF LAW", June, 2000, Copyright (c) 2000 by State Bar of Texas, Texas Bar Journal.

3. 64 Tex. B. J. 860, ARTICLE: UPL: STATE BAR OF TEXAS TASK FORCE RECOMMENDATION OF A NEW STATUTORY DEFINITION FOR THE UNAUTHORIZED PRACTICE OF LAW, October, 2001, Copyright (c) 2001 by State Bar of Texas, Texas Bar Journal.

TREATISES AND ANALYTICAL MATERIALS

1. 3-32 Texas Real Estate Guide § 32.21, TRANSACTIONS: CONSTRUCTION, MECHANICS' AND MATERIAL-MEN'S LIENS, Persons Entitled to Lien, Texas Real Estate Guide.

2. 1-4 Dorsaneo, Texas Litigation Guide § 4.03, Pretrial Practice (Chs. 1-114), Prelitigation Planning (Chs. 1-4), Rules Governing Statutory Construction, Dorsaneo, Texas Litigation Guide.

3. 1-4 Dorsaneo, Texas Litigation Guide § 4.201, Pretrial Practice (Chs. 1-114), Prelitigation Planning (Chs. 1-4), Statutes and Rules, Dorsaneo, Texas Litigation Guide.

4. 14-222 Dorsaneo, Texas Litigation Guide § 222.06, Pleadings in Commercial Litigation (Chs. 210-242), Deceptive Practices and Warranties (Chs. 220-223), Suit Under BOA, Dorsaneo, Texas Litigation Guide.

5. 20-84 Texas Transaction Guide--Legal Forms § 84.21, REAL ESTATE TRANSACTIONS, Development and Construction, Persons Entitled to Lien, Texas Transaction Guide--Legal Forms.

6. 20-84A Texas Transaction Guide--Legal Forms § 84A.21, REAL ESTATE TRANSACTIONS, Development and Construction, Persons Entitled to Statutory Mineral Lien, Texas Transaction Guide--Legal Forms.

# APPENDIX

# "Tab 5"





 HANDSOMER
 SHARPERER
 LESS EXPENSIVER
 HARRY'S

 Games |  Word of the Day |  Video | Blog: Words at Play | My Faves

Dictionary

# encumbrance

SAVE   POPULARITY
 

*noun* | en·cum·brance | \in-'kəm-brən(t)s\

Share   g+1   Tweet

## Definition of ENCUMBRANCE

1 : something that encumbers : IMPEDIMENT, BURDEN

2 : a claim (as a mortgage) against property

   📖 See encumbrance defined for kids »

ADVERTISEMENT



Sponsored By Fidelity

### How to prioritize debt

Credit cards. Loans. Mortgages. Watch this video for three tips on which to tackle first.

## Examples of ENCUMBRANCE

<without the *encumbrance* of a heavy backpack, I could sprint along the trail>

## Ask The Editor Videos




**Lay vs. Lie**       **'Try and' vs. 'Try to'**

## First Known Use of ENCUMBRANCE

1535



Whatever your dream ...

## Words at Play

 A Handy Guide to Ruffians, Rapscallions, Cads & More

 The Joy of Tom Swifties



modelsQuiz

NEW MODELS MAGAZINE ▸ VIEW MORE

## Word Games

Take a 3-minute break and test your skills!

Name That Thing    

True or False?    

Spell It